## HAZARD *et al. v.* DILLON *et al.*

*(Circuit Court, S. D. New York.   March 28, 1888.)*

1. TRUSTS—DUTY OF TRUSTEES—BILLS FOR ACCOUNTING—MISJOINDER OF CAUSES.
    In a bill by the stockholders to compel the trustees of a company to account for the unpaid profits on their respective shares upon the completion of the trust, it is improper to join a complaint against the trustees to compel them to acount for and pay over to one of the complainants certain dividends wrongfully paid by them to a third party upon his nominal and fraudulent ownership of stock, in which dividends the other complainants have no interest.

2. SAME—PARTIES—OF CORPORATIONS—STOCKHOLDERS.
    To a bill by the stockholders against the trustees of a company to compel an accounting and distribution of the dividends and profits upon the completion of the trust, the real owner of shares obtained by fraud from the trustees by a nominal owner, is a proper party complainant, although such real owner has not complied with the trust agreement; the compliance by the nominal owner inuring to the benefit of such real owner.

3. SAME—ESTOPPEL OF TRUSTEE TO ALLEGE FRAUD.
    A contract for the construction of a railroad was assigned in trust for a company, the trustees of which were also the directors of the railroad. *Held* that, in an action by the stockholders of the construction company to compel the trustees to account for the profits from such contract, the trustees could not assert that the contract was in fraud of the railroad, nor that the stockholders had paid no consideration for the contract, and that the railroad was not a necessary party.

4. SAME—LACHES OR LIMITATIONS—DEMURRER.
    A bill by stockholders to compel the trustees of a corporation to account for the dividends and undistributed profits derived from the construction of a

railroad is not demurrable on the ground of laches or limitation where the bill fails to show on its face when the road was completed or when the right to final accounting accrued.

In Equity. On demurrer to bill.

*Joseph H. Choate,* for plaintiffs.

*John F. Dillon* and *Artemas H. Holmes,* for defendants.

SHIPMAN, J. This is a demurrer to a bill in equity. The complainants are Rowland Hazard and sundry other stockholders in the Credit Mobilier of America, a corporation which was created under the laws of the state of Pennsylvania, who bring the bill in behalf of themselves and all others who were stockholders in said corporation on October 15, 1867, and July 3, 1668, and who may elect to unite in the cause as complainants, and the said Credit Mobilier. The defendants are Sidney Dillon and divers others, who were either the trustees named in the hereinafter recited agreement, or the successors of said trustees, or their administrators or executors.

The averments of the bill are as follows: On August 16, 1867, a contract for the construction of certain portions of the railroad and telegraph line of the Union Pacific Railroad Company was entered into between that corporation and Oakes Ames. On October 15, 1867, a written agreement was made between said Ames of the first part, Thomas C. Durant, Oliver Ames, John B. Alley, Sidney Dillon, Cornelius S. Bushnell, Henry S. McComb, and Benjamin E. Bates of the second part, and the said Credit Mobilier of the third part, by which the said contract was assigned to the parties of the second part, upon, *inter alia,* the following conditions and trusts, viz.: That the parties of the second part should perform all the terms and conditions of the said contract so assigned, which were to have been performed by the said Ames, and that the avails and proceeds of said contract, after certain deductions for expenses, should be held by the parties of the second part for the use and benefit of the several persons holding and owning shares in the capital stock of the said Credit Mobilier of America on the day of the date of the contract, or their assigns, and for the use and benefit of the assignees of such holders who might comply with the provisions of the said contract. Said Bushnell and Durant were two of the three members of the executive committee of said railroad company, who had, on behalf of said company, executed the construction contract with Oakes Ames. On July 3, 1868, the agreement of October 15, 1867, was, by an agreement in writing, executed by all the parties to said first agreement, and by the then stockholders of the said Credit Mobilier, so far changed and modified that all the trusts in favor of the stockholders of the Credit Mobilier of America, and the assignee of stockholders thereof, were thereby transferred to and vested in the persons named in said last agreement, in the shares and proportions annexed to their respective names, said persons being all the stockholders of the Credit Mobilier. The individual complainants were then stockholders thereof, and now are beneficiaries un-

der said contract. At the date of each of said agreements, said Durant was the nominal owner of 5,658 shares of the capital stock of said Credit Mobilier Company, but in fact the same had been fraudulenty acquired by him with the funds of said company, and said shares equitably belonged to the other stockholders of said company in proportion to their respective shares in its stock. Said trustees proceeded to act as such, and received large amounts of money and securities. The complainants and said Durant complied with the provisions of the agreement of October, 1867. All the work undertaken by said trustees to be performed has been completed, and the trustees have received, or ought to have received, from the railroad company all the sums payable for said work; and it is alleged that "nothing remains for said trustees to do but to account for and to pay over to the complainants and their co-beneficiaries under said agreements the dividends, profits, and sums to which they are equitably entitled." It is not alleged when the railroad was completed. No account of the proceeds and avails of said contracts has been rendered by said trustees, although they have been often requested to render such an account. Of the cash and other property which were received by the said trustees under and by virtue of the aforesaid agreement of October 15, 1867, some portions have been divided and distributed among the beneficiaries under said agreement, but of the exact amount of such distribution, the complainants are not advised. The residue of said property has not been distributed or otherwise accounted for, but the exact amount thereof the complainants are ignorant of; nor have the complainants knowledge of the amounts of, in cash or things of value, which were in all received by the said trustees under said contracts. They know that the amounts thus received were large, amounting to many millions of dollars. Demands have been made in behalf of the said beneficiaries upon some of the said trustees for an inspection of their books, but the demands have been refused. No account of the sums of money and of the earnings has been filed, nor have they rendered to the *cestuis que trustent* any statement of the said earnings, although requested so to do.

The bill further alleges that, although it was the duty of the trustees to execute the trust faithfully, they neglected to give proper attention to it, appointed improper and unsuitable agents, and that the losses by reason of their breaches of trust amount to $10,000,000. The particular wrongful acts and neglects which are specified are the intrusting the supervision of the work to said Durant, who they knew was reckless, dishonest, and unfit to have the control of important financial interests. It is alleged that he actually conducted the business extravagantly and fraudulently; and thus through the negligence of the trustees, said Durant defrauded the complainants out of large sums.

On or about January 7, 1869, and February 1, 1870, the trustees transferred to said Durant, as dividends and profits upon the 5,658 shares of Credit Mobilier stock nominally standing in his name, 25,316 shares of the stock of the Union Pacific Railroad Company, and its income bonds to the amount of $700,000, although they knew and had

notice that said dividends did not equitably belong to said Durant, and should not have been paid to him. In 1868, a bill in equity was filed in the supreme court of the state of Rhode Island by Isaac P. Hazard and others against said Durant and other trustees, praying that Durant should be enjoined from receiving or disposing of, and that the trustees should be enjoined from paying or delivering to him, any dividends or earnings which should be thereafter declared or paid upon said contract. The Credit Mobilier, the Union Pacific Railroad Company, Oliver Ames, John Duff, and said Durant appeared in said suit, and in August, 1868, an injunction *pendente lite* was granted and served upon them in accordance with the prayer of said bill. In December, 1882, a final decree was made in said suit that the said 5,658 shares of stock of the Credit Mobilier Company (and also 49 45-100 additional shares, making in all 5,707 45-100 shares) had been purchased by said Durant with the funds of said corporation, and were, in fact, its property, together with any dividends and profits which had accrued to him as the holder of said shares, and he was directed to deliver said shares and dividends to commissioners appointed to receive the same. No decree was rendered against the other defendants, because the only trustees who had been served with process had died during the pendency of the suit, without leaving any estate, or any executor or administrator, within the state of Rhode Island. Said Durant did not comply with said decree, but was, and continued to be until his death, insolvent. The bill then alleges sundry facts for the purpose of repelling any charge of laches in not having previously instituted a suit for the recovery of the dividends upon said 5,658 shares. The bill prays, *inter alia*, for an account of all the moneys or other things of value received under the aforesaid contracts, for a discovery of the manner in which said amounts of moneys or other things were disposed of, and of the residue which remains in the hands of any of the defendants; that the defendants may be charged with all the profits which they received or ought to have received under said contracts, and with the amount of all losses or damages sustained by the beneficiaries by reason of the negligence and improper conduct of the defendants and of their agents in said trust; for the payment to the complainants of the just proportion of the said avails and profits due upon the same stock of which said Durant was the nominal owner; and for the payment of the value of said 25,316 shares of Union Pacific Railroad Stock, and of said income bonds; and for the payment of such moneys, and the delivery of such stocks and bonds, as may be found to be due to the complainants.

The defendant Dillon has demurred to the bill: (1) For misjoinder of parties, in that the Credit Mobilier is improperly joined with the individual complainants. (2) For misjoinder of causes. (3) For want of equity in each and all of the complainants, and non-joinder of the Union Pacific Railroad Company. (a) The complainants show no consideration for, and no interest in, and no equity to enforce the contract of 1867 and 1868. (b) The contract itself is fraudulent, illegal, and void, and the complainants are *participes criminis*, not coming with clean hands,

or to enforce any meritorious equity. (4) Because the claim sought to be enforced is stale, and is barred by limitation and laches.

For the sake of convenience, I shall consider the questions raised by the demurrer in a different order.

1. The alleged misjoinder of causes of action. It plainly appears that the bill has two objects—*First*, to compel the defendants to pay to the Credit Mobilier, one of the complainants, the particular dividends which were wrongfully paid in 1869 and 1870 to Mr. Durant, upon his nominal and fraudulent ownership of 5,658 shares of the stock of said company, the title to which was in litigation in Rhode Island, from 1868 to 1882; *second*, to compel the defendants to account to the said Credit Mobilier, as the owner of said 5,658 shares, and to the other stockholders in said company for the unpaid dividends or profits, if any there be, upon their respective shares in the said Credit Mobilier Company, which ought to have been divided among said stockholders at the completion of the construction contract. The propriety of this joinder is attacked upon the ground that the matter of the repayment to the Credit Mobilier of the dividends upon the Durant stock is a matter with which the individual stockholders have no interest, and that thus two distinct and independent matters are linked together in one suit. The complainants, assenting to the proposition that there is a union of independent matters of account, with one of which the Credit Mobilier is solely concerned, defend the bill upon the principle that in a bill for accounting against trustees all of the *cestuis que trustent* must be before the court with their claims, especially where there has been a breach of trust, and misapplications of funds, and where an accounting is necessary to ascertain the amount of the funds. This general rule is a correct one, and when the ascertainment of the amount which properly belongs to a trust fund, and the division of such amount among the *cestuis que trustent*, are the only subjects of the bill, the rule is to be observed. But it does not follow because the defendants are trustees, and all the complainants have different claims as *cestuis que trustent* against them, that therefore all possible claims which arise upon different sets of facts, and in which the complainants have no common interest, are to be grouped together in one suit, if the question of the payment of some of their claims has no bearing upon the ascertainment of the amount which properly belongs to the trust fund. Diverse subjects in which the complainants have no common interest, and the decision of one of which does not affect the amount of the trust fund to be divided, should not be joined together, even in a bill for accounting by *cestuis que trustent* against trustees, solely on the grounds that each subject relates to the management of the same trust. Again, the fact that the different causes of action relate in some way, but not in the same way, to the management of the trust fund, is not sufficient to justify a combination, in one suit, of all the various causes of complaint against the trustees, if the causes of action are of so different character that it would be inconvenient or unjust to unite them in one suit. In *Campbell* v. *Mackay*, 1 Mylne & C. 603, the court, after asserting what has been declared elsewhere, that "to lay down any rule, applicable univers-

ally, or to say what constitutes multifariousness as an abstract proposition, is, upon the authorities utterly impossible," also says:

"Frequently the objection raised, though termed 'multifariousness,' is in fact more properly misjoinder; that is to say, the cases or claims united in the bill are of so different a character that the court will not permit them to be litigated in one record. It may be that the plaintiffs and defendants are parties to the whole of the transactions which form the subject of the suit, and nevertheless those transactions may be so dissimilar that the court will not allow them to be joined together, but will require distinct records."

The question then resolves itself into this: Is the repayment of that portion of the declared dividend, which was wrongfully paid to Durant —being a matter in which the Credit Mobilier solely is interested—a subject which, by reason of its separate character, ought not to be joined with an accounting for the benefit of all the stockholders for the purpose of ascertaining the amount of the fund which has not been divided? The specific claim to the dividend wrongfully paid to Durant does not arise out of the same transactions which create the second cause of action. It arises out of Durant's fraud, and the trustees wrongful complicity with it by the payment to him of a properly declared dividend, which should have been paid to another person. The first cause of action is the payment of ascertained profits to a person who had fraudulently represented himself as a stockholder, and is to be paid to the Credit Mobilier, not as a part of the trust fund which is to be divided, but because the defendants wrongfully paid that dividend to the wrong person; the second cause of action is the ascertainment of the amount of the undistributed portion of the fund. The first is not strictly a matter of accounting; the second is a proper matter of account. The two subjects are distinct, and are governed by different principles, and have very little in common with each other. They seem to be linked together, not because they have a natural relationship to each other, but in the expectation that strength may be derived from the union. The second cause of demurrer is sustained.

2. The misjoinder of parties. If the Credit Mobilier Company is the owner of the shares which stood in Durant's name, it is properly a party with the named stockholders of record in a bill for an account from the trustees, and is entitled to participate with the other stockholders in any benefits which may result therefrom. It was not named in the deed of trust, and, as a matter of course, not being a stockholder of record, it could not itself comply with the fifth article of the contract in regard to furnishing a proxy to the trustees; but the person in whose name the stock fraudulently stood complied with all the provisions of the contract. The Credit Mobilier, being the real owner of the stock of which Durant was the nominal owner, his compliance with the contract provisions must inure to its benefit. If it is once admitted that the corporation is the real owner of the stock, and that the nominal owner has performed all the requirements of the contract, there is no technical reason which should prevent the real owner's securing the benefits which legally belong to the ownership of the shares.

3. The alleged want of equity in each of the complainants. The defendant next contends that, inasmuch as the assignment of the Oakes Ames contract to trustees, who were also directors in the railroad company, was fraudulent, the complainants, who neither paid anything nor parted with anything of value in pursuance of it, cannot be permitted in a court of equity to seek for or to obtain any of the pecuniary fruits which have arisen from the fraud. I do not deem it important to discuss the principles which underlie this proposition, or the cases in which the principles have been presented in different phases; but one marked difference between this case and many of its predecessors is to be noticed. This contract was not illegal by reason of a statutory prohibition of it, whether presumably or actually fraudulent. It was not absolutely void, but was voidable at the election of the defrauded party. The railroad company has made no effort to declare or have it declared void, and has affirmed it, so far as was possible, by its long silence. If the trustees have in their hands any of the profits of the contract which they received as trustees for the complainants, it is not permitted to them to assert what the defrauded party has declined to assert, and to claim adversely to those for whom they acquired and ought to hold the property, or to refuse to pay over the results of the executed contract, or to claim that their *cestuis que trustent*, having paid nothing under the contracts, have no equitable rights in its fruits. *Railroad Co.* v. *Durant*, 95 U. S. 576; *Brooks* v. *Martin*, 2 Wall. 70. For this reason it is not necessary to make the railroad company a party. It has now no interest in the controversy.

4. The defense of the statute of limitations, of laches, and of the staleness of the claims. In regard to the claim of the Credit Mobilier for the dividend wrongfully paid to Durant, the pleader recognized the duty of alleging adequate excuses for the delay in bringing suit upon causes of action which arose in 1869 and 1870, and has stated reasons which, uncontradicted and unexplained, are apparently sufficient. In 1868, and before the payment of these profits, and in anticipation thereof, the Rhode Island suit was commenced, to which the Credit Mobilier and Durant were parties, and which was not decided until 1882. Meantime it was not the duty of the corporation to commence in its own name an independent suit for the recovery of these dividends. The defendants also insist that the claims of the complainants for the payment of undistributed profits, and the reimbursement of losses, is, upon its face, a stale claim, which has been well known since the road was completed, but which was sued upon after five of the seven trustees were dead, by parties who had for a long time slept upon their alleged rights, and therefore was not properly the subject of an equity suit in May, 1886, when the bill was filed, and that no apology for the laches is presented in behalf of any party other than the Credit Mobilier. The bill does not state when the road was completed, or when the right to a final accounting commenced, but it is said by the defendants that the date of the completion of the road was, in the case of *U. S.* v. *Railroad Co.*, 99 U. S. 492, judicially ascertained to be in 1869, for the purposes which were at issue

·in that litigation, and that the date is a matter of public history. "Courts will take notice of whatever is generally known within the limits of their jurisdiction; and if the judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he may deem safe and proper." *Brown* v. *Piper*, 91 U. S. 37. Courts also take judicial notice of matters of public history which affect the whole people. *Bank* v. *Earle*, 13 Pet. 519, 590; 1 Greenl. Ev. § 5. It is true that the building and completion of the Union Pacific Railroad were facts of great public importance. It was undertaken at a critical period in the history of our country, as a military necessity for the preservation of its territory, and as a most important instrumentality for the common benefit of widely separated states. "It was a national work, originating in national necessities, and requiring national assistance." *U. S.* v. *Railroad Co.*, 91 U. S. 72. But I have serious doubts whether the date of the completion of a railroad is within the class of events of public history of which courts are permitted to take judicial notice in the decision of a question of the character which is here presented. I have more serious doubts whether, without evidence, it can be judicially assumed that, although the road was completed for certain purposes in 1869, and was completed to the satisfaction of the commissioners appointed by the government in 1874, either of those dates can be taken as the date when expenditure by the contractors ceased, and they were discharged from their obligations by the company, and the duty of accounting only remained. It is not improbable that the road was in running order for trains before the necessary depots, complete equipment, rolling stock and side tracking had been finished; and it would be imprudent to infer that because trains habitually ran over the road, and it had been accepted by the government, therefore the contract had been completely performed. I am therefore of opinion that the question of the effect of the statute of limitations or of laches or of staleness does not arise upon the face of the bill.

The second cause of demurrer is sustained. ·