**𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.**

Brown and Others for, &c., v. Bedford City Land and Improvement Co. and Others.

January 19, 1895.

1. Multifariousness—*Multiplicity of Suits.*—A court of equity, in order to avoid a multiplicity of suits, and to have before it all persons interested in the subject of dispute, or to be benefited or injured by the decree, will, when necessary to attain the ends of justice, mould its pleadings with regard to substance rather than form, and will introduce new remedies, or modify the application of the old in order to meet the wants of society as they arise.

2. Corporate Directors—*Suit by Stockholder.*—Where corporate directors or agents have committed a breach of trust, either by their fraud, negligence, *ultra vires* acts, or otherwise, for which they are liable, and the corporation is either unable or unwilling from any cause to institute a suit to redress the wrong, one or more stockholders, suing on behalf of themselves and other stockholders similarly situated, may institute a suit in equity to hold the offending officials liable. Such a suit, however, though brought in the name of a stockholder, is really the suit of the corporation, and enures to its benefit.

3. Multifariousness—*Misjoinder of Plaintiffs—Stockholders and Creditors.*— Where a large number of persons have been fraudulently induced to become subscribers to a company by identical representations, they may unite in one bill, praying the cancellation of their subscriptions and make the offending company, and its officers and agents, through whom the fraudulent representations were made, defendants. But creditors of the company cannot be united in the same suit. Their rights and interests are not only diverse, but wholly antagonistic to those of the stockholders. There is an "irrepressible conflict" between the two classes, and if united in the same bill, it will be multifarious for misjoinder of complaints. *Bosher* v. *Richmond and Harrisonburg Land Company,* 89 Va. 455, *distinguished.*

4. Multifariousness—*Misjoinder—Corporate Officers.*—A bill which charges various acts of maladministration against the officers of a company,

some of which are attributable to individual officers, some to different groups of officers, and some to the president and directors as a whole, would seem to present a combination of causes of action so hopelessly diverse as to be incapable of adjustment in one suit.

5. MULTIFARIOUSNESS—*Double Aspect—Stockholders—Rescission—Misjoinder of Causes of Action.*—A bill may be framed in a double aspect, but the alternative case stated must be the foundation for precisely the same relief. Stockholders who come into a court of equity and seek to have their contracts of subscription rescinded on the ground that they were fraudulently obtained, cannot in the same bill complain of the malfeasance and misfeasance of the corporate directors in the management of the corporate property, and seek relief which rests upon their relation as stockholders of the defendant company. Such relief must be considered a distinct act of affirmance and ratification of the very transaction which they, in another part of their bill, sought to repudiate.

Appeal from a decree of the Circuit Court of Bedford county, pronounced June 20, 1892, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Berkley & Harrison, Eugene Withers, M. M. Gilliam* and *H. M. Tyler,* for the appellants.

*R. G. H. Kean* and *Kirkpatrick & Blackford,* for the appellees.

KEITH, P., delivered the opinion of the court.

This is a bill in equity brought by R. Lee Brown and sixty-two other stockholders of the Bedford City Land and Improvement Company, on behalf of themselves and all other stockholders similarly situated, and all other creditors of said company who should come into the suit by petition and contribute to the cost thereof.

They state that a charter was granted by the legislature of Virginia, under the name of the Bedford City Land and Improvement Company, to S. Griffin and others, and complain that they were induced to subscribe to the stock of said company through the false and fraudulent representations set forth in the prospectus filed as an exhibit in this cause. The fraud which they claim was perpetrated upon them is set out fully in the bill.

They allege that the company, being duly organized, purchased from three of its directors, Claytor, Bolling, and Berry, certain real estate, know as the Brown residence, and the McGhee lot, at an exorbitant price, upon which there is still due large sums of money, and that in addition thereto the three directors were paid a *bonus* of 300 shares of stock of the Bedford City Land and Improvement Company; that the said company borrowed large sums of money at usurious rates of interest; that it conveyed real and personal estate to trustees to secure bonds of the company aggregating $30,000, without requiring security of the trustees for the due execution of the trust; that J. M. Berry, at that time president of the company, purchased back from the company's vendee forty three lots of land which had been previously sold by the company, and for which lots he paid, or contracted to pay, on the re-purchase, about twice the sum which the company had received, and that there was paid out of the funds of the said company more than $21,000, leaving due and unpaid for said lots about the sum of $5,000; and that J. Lawrence Campbell, now president, has placed this demand of J. M. Berry among the liabilities of said company; that J. M. Berry, while president, cancelled subscriptions which had been made to the capital stock by various parties therein named; that O. Wemple and E. W. Dixon subscribed for 300 shares of capital stock and paid therefor, and certificates of stock were issued to them, but that the amount so paid did not go into the

treasury, but was received by one or more of the directors of said company, and appropriated to their own use; that R. B. Claytor, one of the directors, cancelled the subscription of one Jopling for 100 shares of stock; that large sums were paid out to the officers of the company in the form of salaries; that money was illegally expended on the Bedford and James River Railroad, and that all these things were done by the company, its officers and agents, wrongfully and illegally, and constituted a fraud upon the complainants, and each of them.

The prayer of the bill is that J. Lawrence Campbell, and other officers and directors of the Bedford City Land and Improvement Company, and the Bedford City Land and Improvement Company, be made defendants to the bill, and be required to answer the same; that the said officers, and each of them, be required to pay and refund to the company all moneys paid out in the improvement and development of land, or on account of salaries, commissions, or for any other purpose; and that they be required to pay and refund to each of the complainants all sums of money paid by the complainants upon their subscriptions for stock, with interest thereon; that an injunction be granted restraining the company and its officers from disposing of the properties of the company; that a receiver be appointed; that all proper accounts be taken, and for general relief.

At a subsequent day an amended and supplemental bill was filed. In that bill the charges and specifications of fraud in the procurement of stock subscriptions are reiterated, and the several acts of malfesance and misfeasance on the part of the officers of the company are recapitulated; and it is further set out that the defendant company was entirely under the control of the officers, directors, and promoters, who, owning a large majority of the stock, had complete and absolute control of the company; and that, at a meeting held on the very day upon which this suit was instituted, all the fraudulent and illegal

transactions complained of in the original and supplemental bills, were, notwithstanding the protest of the minority stockholders, ratified and confirmed. They charge that the officers, directors, and promoters, are liable by reason of their fraudulent acts to the company, and to each of the complainants, for all the money which complainants have paid in upon their subscriptions, and that the company is entitled to have all the money and assets refunded to it which have been illegally appropriated and expended by the said officers, directors, and promoters; that any appeal to the company for redress, dominated and controlled by those very persons who have been guilty of the wrongful acts for which redress is sought, would be unavailing, and that therefore the complainants were utterly without remedy save in a court of equity.

It appears that since the filing of the original bill a new board of directors has been elected. They are therefore made parties to the amended bill, together with all those who are parties to the original bill.

The prayer is that the officers and directors be required to pay to the company all moneys illegally paid out for any purpose, and that they be required to pay to the complainants the money received upon their subscriptions to stock, with interest, and with prayers for injunction, receiver, and for general relief as in the original bill.

To these bills the defendants demurred, and the Circuit Court entered a decree sustaining the demurrer, and dismissing the original and amended bill, and the case is here upon an appeal from that decree.

The contention of the appellees is that the amended and supplemental bills are to be taken together as stating the case of the plaintiffs, and that they are obnoxious to the objection of multifariousness; that there is a misjoinder of plaintiffs, a misjoinder of defendants, and a misjoinder of causes of action, in that, causes of action distinct from one another, arising out of different transactions, are united in one suit.

Upon the part of the appellants it is contended that none of these objections exist.

It is conceded that a court of equity, in order to prevent a multiplicity of suits, and that it may have before it all persons interested in the matters of dispute, or who may be benefited or injured by the decree, will, when it is necessary to attain the ends of justice, mould its pleadings with regard to substance rather than to form, introduce, it may be, new remedies, or modify the application of the old, to meet the wants of society as they arise. There are, however, established rules and principles which cannot be disregarded or transcended. The bill in this case, in the first place, asks for relief on the part of stockholders who had been fraudulently induced to subscribe to shares of stock in the defendant company.

The prayer is for a cancellation of the contract of subscription, and for a return of the money already paid. Had the bill stopped here it might have been sustained upon the authority of *Bosher* v. *Richmond and Harrisonburg Land Company*, 89 Virginia, 455. It goes on, however, to invite the co-operation not only of all persons belonging to their own class, but of all creditors of the company as well. This is a distinct departure from the decision in the case just cited, which limits carefully and strictly the operation of the principle there invoked, and establishes that where a large number of persons have been, by identical representations, fraudulently induced to become subscribers to a company, they may unite in one bill praying the cancellation of their subscriptions, and make the offending company, and its officers and agents, through whom the fraudulent representations were made, defendants. It is nowhere said in the case as reported that creditors could have been impleaded along with the complainant stockholders. Their rights and interests are not only diverse, but wholly antagonistic. The unpaid subscriptions of the stockholders constitute a trust fund for the satisfaction

of the creditors.   The creditor, therefore, would naturally seek to enforce the very liability from which the stockholder asks to be relieved.   Between the two classes there would seem, indeed, to be an "irrepressible conflict."   But this is not all.   In the original bill, various acts of maladministration are charged against the officers of the company.   Some of these acts are attributed to individual officers, some to different groups of officers, and some to the president and directors as a whole.   This would seem of itself to be a combination of causes of action so hopelessly diverse as to be incapable of adjustment in one suit.

It is well settled that for the class of injuries now under consideration the officers are responsible to the company, but inasmuch as the very officials who have perpetrated the wrongs are sometimes strong enough to shield themselves from all responsibility through the agency of the company, courts of equity, in order that no wrong may go unredressed, have introduced the principle which permits a stockholder who feels himself aggrieved by the administration of the affairs of the company of which he is a member, and who is unable to induce the company to demand reparation from its offending officials, to go into court and call to account those by whose acts of omission or commission, he has been aggrieved. Such a suit, though brought in the name of a stockholder, is really a suit of the company, and inures to the benefit of the corporation.

"Where the corporate directors have committed a breach of trust, either by their frauds, *ultra vires* acts, or negligence, and the corporation is unable or unwilling to institute suit to remedy the wrong, a single stockholder may institute that suit, suing on behalf of himself and other stockholders, and for the benefit of the corporation."   Cook on Stockholders, section 645.

Conceding that many stockholders may do what a single

stockholder may do for himself and others, and that the corporation here was either unable or unwilling to institute suit to remedy the wrongs complained of, as is alleged in the amended and supplemental bill, it may be that this cause of action is sufficiently stated in the bills. But here the plaintiffs come into court as stockholders; they sue as stockholders; the injury is to them as stockholders; as stockholders they are to be taken as having demanded the redress of grievances at the hands of the company; and it is through the company (of which they are members), that the relief sought is to be attained.

We have, then, as one cause of action set up in this bill, the complaint that a contract of subscription, fraudulently obtained, creating thereby a voidable contract between the complainants and the company, which is disaffirmed by the plaintiffs, and a recision of which is prayed in one part of the bill, coupled with a cause of action set out by the same plaintiffs against the same defendants, which rests upon their relation as stockholders to the defendant company, which they seek here to maintain only by virtue of their position as stockholders, and must therefore be considered a distinct act of affirmance and ratification of the very transaction which they, in another part of the bill, sought to repudiate. It seems to me that this is violative of all rules of pleading, and that to sustain this bill would require this court to disregard well established principles, which constitute landmarks in our system of equity jurisprudence.

In *Shield* v. *Barrow*, 17 Howard, 130, where there was an original and an amended and supplemental bill, the court said that the bill as amended presented "not only two aspects, but two diametrically opposite prayers for relief, resting upon necessarily inconsistent cases; the one being that the court would declare the contract rescinded for imposition and other causes (as in this case); and the other, that the court would de-

clare it so free from all exception as to be entitled to its aid by a decree for specific performance.'' And the court says further: ''Whether this amendment be considered as leaving the bill in this condition, or as amounting to an abandonment of the original bill for a recision of the contract, and the substitution of a new bill for the specific performance, it was equally objectionable. A bill may be originally framed with a double aspect, or may be so amended as to be of that character. But the alternative case stated must be the foundation for precisely the same relief; and it would produce inextricable confusion, if the plaintiff were allowed to do what was attempted here.'' How applicable that language is to the case under consideration! I refer also to the case of *Yeaton* v. *Lennox*, 8 Peters, 123.

In Pomroy's Equity Jurisprudence, section 268, it is said: ''In that particular family of suits, whether brought on behalf of a numerous body against a single party, or by a single party against a numerous body, which are strictly and technically 'bills of peace,' in order that a court of equity may grant the relief and thus exercise its jurisdiction on the ground of preventing a multiplicity of suits, there does and must exist among the individuals composing the numerous body, or between each of them and their single adversary, a *common right*, a community of interest in the *subject matter of controversy*, or a common *title* from which all their separate claims and all the questions at issue arise; it is not enough that the *claims* of each individual being separate and distinct, there is a community of interest merely in the *question of law or of fact* involved, or in the *kind and form of remedy* demanded and obtained by or against each individual.''

In 1 Daniel's Pl. and Pr. 242,* the law is stated as follows: ''It is generally necessary, in order to enable a person to sue on behalf of himself and others, who stand in the same relation with him to the subject of the suit, that it should appear

that the relief sought by him is beneficial to those whom he undertakes to represent. Where it does not appear that all the persons intended to be represented are necessarily interested in obtaining the relief sought, such a suit cannot be maintained; and a plaintiff cannot, in one portion of a bill, sue on behalf of himself and all the other members of a company, and by another portion seek to establish a demand against the company.''

This is the law as stated by writers of established authority, after a careful survey and discussion of a great mass of authorities, and is in entire harmony with other approved text writers.

Nor has any authority been adduced which decides the contrary of the principles here announced. General expressions are scattered here and there which might seem to warrant a more diverse and incongruous association of parties, plaintiff or defendant, than is here approved; but no adjudged case, as far as we have been able to examine the decisions, is in conflict with the law as stated above. There is nothing whatever in the case of *Tyler* v. *Savage*, 143 U. S., 79, at all opposed to the views herein expressed, and we regret that this opinion has already reached proportions which forbid a more careful examination of that and other citations.

To maintain this bill would be not to expand and enlarge the rules of equity pleading, but wholly to disregard them; and it seems to us that such a departure from principles established by numerous adjudged cases, and by the most approved text writers, ought not to be made by the courts. If the due administration of justice, and the needs of society demand such changes and innovations as seem to us to be here invoked, they can be more wisely and safely entrusted to the reforming hand of the legislative department.

In order that all possible injury to the plaintiffs, by reason of the dismissal of their bill, may be obviated, the decree complained of will be so far modified as to declare that it shall be

Opinion.

without prejudice to the right of the plaintiffs, or any of them, to institute such suits at law, or in equity, as they may deem proper, and as thus amended the decree of the Circuit Court of Bedford county is affirmed.

AFFIRMED.