EMMONS et al. v. NATIONAL MUT. BLDG. & LOAN ASS'N OF NEW
YORK et al.

(Circuit Court of Appeals, Fourth Circuit.  February 21, 1905.)

No. 552.

**1. EQUITY PLEADING—MULTIFARIOUSNESS.**

A bill by a borrowing stockholder in a building and loan association against the association, which seeks to have the loan contract of complainant canceled for fraud and usury and on the ground that the association was not authorized to do business in the state, and also on behalf of himself and all other stockholders to have a receiver appointed to take charge of and manage the property and assets of the association in the state on allegations of mismanagement and misappropriation by its officers, is multifarious in substance as well as in form, the relief sought in the two capacities in which complainant sues being not only inconsistent, but antagonistic.

**2. SAME—DEMURRER.**

Where it is manifest on the face of a bill that it presents two causes of action, the defense of multifariousness may be taken by a general demurrer.

Appeal from the Circuit Court of the United States for the Southern District of West Virginia, at Huntington.

The bill in this cause was filed in the circuit court of Cabell county, W. Va., by J. H. Russell and D. W. Emmons, plaintiffs, suing on behalf of themselves and for the use and benefit of all other stockholders in the National Mutual Building & Loan Association of New York, a corporation of said state, conducting business and having estate in the state of West Virginia, and George J. Peet, trustee; and by appropriate proceedings the cause was duly removed into the United States Circuit Court for the Southern District of West Virginia. The bill is very elaborate, and its first, second, fourth, and fifth paragraphs set up the facts of the citizenship of the plaintiffs in the state of West Virginia, and of the defendant company in the state of New York, and of its doing business in said first-named state; of the subscription by the former for 50 shares of the stock of the latter; of the borrowing by them of the sum of $5,000, and securing the same upon certain real estate in Cabell county, W. Va., to George J. Peet, trustee, on account of which they had made large payments, reducing their liability to the sum of $952.56; and that said association asserted a claim against them on account of said loan of the sum of $4,047.44, and was, through said Peet, trustee, proceeding by sale to subject their property to the payment of said demand. By the sixth, seventh, eighth, and ninth paragraphs of said bill complainants charge that they were induced to subscribe to said stock by the false representations of said association in reference to the organization of said company within the said state of West Virginia, the conduct of its business therein, and the period within which its said shares of stock would mature, which false statements formed the basis of their subscriptions, and were known to be false when made to them; that the said association was never duly organized under the laws of said state, or entitled as such to do business therein, and to charge dues, fines, premiums, and interest on its loans, as authorized by the laws of that state in reference to building fund companies, and that all of its said contracts in reference to loans of money in said state, and especially the contracts of the complainants, were usurious; that the directors and managers of said association recklessly conducted its affairs, and practically wrecked the same, improperly appropriated from the loan funds $20,000 per year on account of their services, etc.; that they were misappropriating the loan fund for their own salaries, making it impossible for borrowers to pay off their loans under the original contracts; that the managers and directors of said association had violated and set aside various provisions of

135 F.—44

its by-laws, had arbitrarily withdrawn the sum of $294,000 from the assets of the association, and had refused to permit the stockholders to participate in the profits arising from the sum thus withdrawn; and that they were misappropriating the assets of said association for personal purposes. By the tenth, eleventh, and twelfth paragraphs it is charged that said association had abandoned its corporate business, keeping up only a quasi organization, by reason of the mismanagement on the part of its officers; that they were attempting to collect interest and premiums from its debtors aggregating 12 per cent. of the original loans made them; that there were some 20,000 shares of its stock held by persons throughout the United States with whom it was impossible to communicate and make parties to the suit; that it was necessary for the protection of the citizens of West Virginia, and to prevent the loss and exhaustion of the assets of said company, that said bill should be filed, and that the said association was insolvent. The complainants conclude with a prayer to said bill as follows: "These plaintiffs, being remediless save in a court of equity, where alone such matters are cognizant, would therefore pray that a receiver may be appointed to collect the dues, interest, premiums, and fines paid or to be paid to said association, and to take charge of and rent out the real estate owned by it in this state, and preserve the same pending the suit. Plaintiffs further pray that the said George J. Peet, trustee in the National Mutual Building & Loan Association, may be enjoined, restrained, and inhibited from making sale of the property which the said Peet, trustee, has advertised for sale on the 7th day of August, 1901, until a settlement and an accounting may be had between them. Plaintiffs further pray that the accounts between themselves and said association may be settled, and that they may be given credit for all the payments made by them; that said transaction may be stripped of its usury, and that all the payments made may go as credits on the principal sum borrowed; and that the trust deed given to secure said loan may be canceled and set aside upon the payment by them of such sum as is found to be due, and that their interest as stockholders in said association may be preserved and taken into the custody of this court, there to be administered according to law, and for such other general relief as in equity they are entitled; and they will ever pray." To this bill the association appeared, and filed its general demurrer, and, the plaintiffs declining to amend their bill, the lower court sustained the demurrer, and dismissed the bill; the propriety of which action is now the subject of this appeal.

Z. T. Vinson, for appellants.
C. R. Wyatt, for appellees.

Before PRITCHARD, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

WADDILL, District Judge (after stating facts as above). The real question involved is whether or not the bill of the complainants is multifarious, and should have been dismissed. It will be observed that while many charges are preferred against the defendant company, the gist of the bill is, as shown by its prayer, that the true state of accounts between the complainants and the defendants may be ascertained, and their liability determined; that the transaction may be stripped of usury, and all sums paid by them be applied as credits on the principal sum borrowed; that the trust deed should be canceled and set aside; that said complainants' rights as stockholders may be preserved and enforced against the defendant; that the affairs of said association be placed in the hands of a receiver; and that pending suit such receiver should collect the dues, interest, premiums, and fines paid or to be paid to the association, and take charge of and rent out and preserve its property.

If the generally recognized doctrine that antagonistic causes of action cannot be set up in the same bill be accepted, then manifestly this bill cannot be maintained, as it is clear that while, perchance, the complainants may have rights in the double capacities set forth in the bill, such rights are palpably opposed one to the other, and depend for their determination upon entirely different considerations. The defense that the company would interpose to one branch of the relief sought by the complainants would be entirely different to that offered to the other. One of the causes presented by the bill involves the question whether the complainants are indebted to the defendant company; the other, whether the defendant company has any valid corporate existence at all—whether it was ever legally organized, and entitled to do business in the state of West Virginia, together with its method of doing business, and its right to continue to do business within said state. The effect of what the complainants seek to do in this case is, on the one hand, to have the defendant company declared an illegal corporation, doing business illegally without proper charter or by-laws, or with invalid by-laws; and as a consequence of which, and because of fraud in the inception of the contract with the complainants, to have their stock subscriptions treated as null and void, their debt as usurious, and the lien securing the same canceled. On the other hand, they ask to be treated as shareholders in such illegal corporation; to be made subject to its alleged invalid by-laws, and to be entitled to its benefits; with the right to have the association's officers account and to be held liable thereunder; and that the court will, through its receiver, proceed to administer the affairs of such corporation, to carry out the purposes of the corporation, and enforce the provisions of such by-laws. These positions are not only inconsistent, but plainly hostile. The complainants may be entitled to rights in each capacity, but they should not be allowed to pursue them in the same suit, unless the well-known doctrine of equity jurisprudence in reference to multifariousness is to be abandoned. "In order to enable a plaintiff to sue on behalf of himself and others who stand in the same relation with him to the subject of the suit, it is generally necessary that it should appear that the relief sought by him is beneficial to those whom he undertakes to represent. Where it does not appear that all the persons intended to be represented are necessarily interested in obtaining the relief sought, such a suit cannot be maintained; and a plaintiff cannot sue on behalf of himself and all the other members of a company, and also seek to establish a demand against the company." Daniell's Ch. Pr. (6th Ed.) p. 243. The value of this authority bearing upon questions of federal procedure in equity, not inconsistent with the rules of the Supreme Court of the United States, is well recognized; and the reason for the doctrine as thus laid down by the learned author is manifest. The relief sought by the complainants in behalf of themselves, relative to their own debt, is directly opposed to the interest of those in whose behalf the same complainants seek to sue as shareholders; every dollar of reduction in their indebtedness injuriously affecting the other shareholders' interests. Story's Eq. Pl. § 221; Hazard v. Dillon (C. C.) 34 Fed. 485. Just when and when not a bill may be said to be multifarious is a question not always free from doubt, and it has been well said by the Supreme Court of the

United States that "it is impracticable to lay down any rule of multifariousness as an abstract proposition; that each case must depend upon its own circumstances, and must necessarily be left where the authorities leave it—to the sound discretion of the court." Oliver v. Piatt, 3 How. 333, 411, 11 L. Ed. 622; Barney v. Latham, 103 U. S. 205, 215, 26 L. Ed. 514. While it may be difficult to specify a positive criterion as to a multifarious bill, the Supreme Court seems to have made it clear that such condition exists where the grounds of suit are different and each ground is sufficient within itself to sustain the bill. Brown v. Guarantee Trust Co., 128 U. S. 412, 9 Sup. Ct. 127, 32 L. Ed. 468, and cases cited; Security Savings Ass'n v. Buchanan, 66 Fed. 799, 31 U. S. App. 244, 14 C. C. A. 97; First National Bank v. Peavey (C. C.) 75 Fed. 155. Applying this test to the present case, it is apparent that this bill is multifarious, since the complainants have the undoubted right by proper suit to have their liability settled as debtors of the defendant company, and it is equally clear that by another and entirely independent action they can have determined their rights as stockholders in the company; and that the two causes of action are confessedly different within themselves. The Supreme Court of West Virginia has very recently had under review the question involved here against this same defendant. Day v. Building & Loan Association, 53 W. Va. 550, 552, 44 S. E. 779. To that decision and the cases therein referred to special reference is made as containing an able exposition of the law on this subject. See, also, Brown v. Bedford City Land Co., 91 Va. 31, 20 S. E. 968, where the subject is also fully and exhaustively considered by the Virginia Court of Appeals.

Counsel for the complainants seek to avoid the defense of multifariousness because the same was interposed by a general, and not a special, demurrer, citing Bates on Fed. Prac. § 203; and rely upon the doctrine that the demurrer should be overruled, if the allegations of the bill, taken together, entitle the complainants to some kind of relief, citing La Croix v. May (C. C.) 15 Fed. 236; Mercantile Trust Co. v. R. I. Hospital Co. (C. C.) 36 Fed. 863; Merriam v. Holloway Pub. Co. (C. C.) 43 Fed. 450; Pacific Live Stock Co. v. Hanley (C. C.) 98 Fed. 328. The authorities cited would not make necessary a special demurrer to raise the question of multifariousness to a bill like the present one. Here the defense is one of substance, rather than form, and appears on the face of the bill. It will not do to say that because a demurrer should be overruled where the bill sets up some cause of action against a defendant, relative to a given transaction, that for that reason a suit can be maintained which presents several separate and distinct causes of action against the same defendant. Multifariousness can be taken advantage of by demurrer, plea, or answer; and where it is manifest upon the face of the bill that two causes of action are presented the defense can be interposed by general, as well as by special, demurrer. Oliver v. Platt, 3 How. 333, 413, 11 L. Ed. 622; Tyler v. Hand, 7 How. 575, 12 L. Ed. 824; Hefner v. Northwestern Ins. Co., 123 U. S. 747, 751, 8 Sup. Ct. 337, 31 L. Ed. 309; Foster, Fed. Pr. § 108; Daniell's Ch. Prac. (6th Am. Ed.) 557; Taylor v. Holmes (C. C.) 14 Fed. 498.

Complainants insist that they have the right especially to maintain their cause of action under section 58, c. 53, of the Code of West Virginia of 1899 and section 7 of chapter 96 of the same Code. The first section provides for the appointment of receivers, and the winding up of the affairs of corporations whose charters may have expired, or which may have dissolved before such expiration, at the instance either of creditors or stockholders; and the latter section for borrowers of money filing bills in equity to ascertain whether contracts or loans are tainted with usurious interest charges, and for the recovery of only the principal due under such undertakings. That the rights afforded by these sections can be secured and the full relief therein provided given by appropriate proceedings in the courts of the United States, where the amounts involved are sufficient, and the requisite citizenship of the parties exists, is manifest (Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909; Land Title & Trust Co. v. Asphalt Co., 127 Fed. 1, 62 C. C. A. 23; Jacobs and others v. Mexican Sugar Co. [C. C.] 130 Fed. 589); but this does not seem to affect the question of multifariousness under consideration. The relief afforded by the statute relative to usurious transactions has to be availed of by the borrower of the money or thing secured, and proceedings under the provision regarding the winding up of corporations have to be inaugurated by a creditor or stockholder of the corporation, and not by a debtor and stockholder of the corporation combined, as in this case. Whether a creditor and stockholder combined could blend their interests and grievances in a single suit, it is not necessary to determine here.

The decision of the lower court is plainly right upon principle, and abundantly supported by authority, and the same is affirmed.