PRESENT: All the Justices

JOSEPH MONROE, DERIVATIVELY
ON BEHALF OF MEPCO MATERIALS, INC.

                                                     OPINION BY
v. Record No. 211071                    JUSTICE D. ARTHUR KELSEY
                                               JULY 20, 2023

LISA WAY MONROE, ET AL.

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
J. Bruce Strickland, Judge

In 2018, Joseph Monroe filed a shareholder-derivative suit against his wife, Lisa Monroe, the majority shareholder of a closely held corporation. The trial court rejected the derivative claim and sanctioned Joseph Monroe for pursuing it. On appeal, we vacate the sanctions order, finding that it violated Rule 1:1 and that Joseph Monroe was the proper party to appeal it.

I.

Lisa Monroe and Joseph Monroe were married co-owners of MEPCO Materials, Inc., with 51% and 49% ownership stakes, respectively. Joseph Monroe filed for divorce in October 2018. A week later, Joseph Monroe, as the sole director at that time, caused MEPCO to file a civil action against Lisa Monroe, the majority shareholder, for conversion and breach of fiduciary duty, alleging that she had used MEPCO funds for personal use.

The following year, Joseph Monroe resigned his position at MEPCO and then sought to convert the action against Lisa Monroe to a shareholder-derivative action pursuant to Code § 13.1-672.1. He filed a petition to intervene, a motion to convert the existing suit to a derivative action, and a motion to amend the complaint. The trial court granted the motions, ordering that "Joseph Monroe is hereby made a plaintiff in this case," 1 J.A. at 41, and that the suit be converted to a derivative action. Joseph Monroe's amended complaint, ostensibly asserted on

behalf of the corporation, again alleged conversion and breach of fiduciary duty against Lisa Monroe.

In April 2021, the trial court held a two-day trial. At the end of the plaintiff's case, Lisa Monroe moved to strike the evidence. The court found the evidence insufficient, granted the motion to strike, and opined that it was "apparent . . . based on the totality of the circumstances that Mr. Monroe did not bring this action to benefit the corporation. This suit, it's very clear, was filed for his benefit alone." 2 *id.* at 802. "That will conclude this matter," the court remarked after its ruling, "unless either of you has something else I need to address." *Id.* at 804. Lisa Monroe's counsel then requested "leave to file for post-judgment sanctions." *Id.* Acknowledging that the trial court "remains in jurisdiction over this matter for 21 days after it rules," counsel stated, "I think we can get in here before then." *Id.* at 806. The trial court told Lisa Monroe's counsel to "file whatever motion you need." *Id.* at 810. "I'm not saying I'm going to grant it," the trial court clarified, "I'm not saying I'll even grant a hearing on it, but we'll address it that way." *Id.*

On May 12, 2021, the trial court memorialized its ruling in a "Final Order" drafted by Lisa Monroe's counsel. 1 *id.* at 178-80. The Final Order granted Lisa Monroe's motion to strike and dismissed the complaint and the remaining counterclaim with prejudice. The Final Order concluded by stating:

> Defendants are free to file post judgement [sic] motions for sanctions against Plaintiff and his witness Kristine Williams. Any such motion filed is to be set at the discretion of the Court. The Court makes no finding of the validity of any such motion at this time; and
>
> This matter is final.

*Id.* at 179.

On May 18, 2021, Lisa Monroe filed a post-judgment motion for sanctions. The trial court did not enter any subsequent orders modifying, suspending, or vacating the May 12, 2021 Final Order, and Lisa Monroe did not request any such orders. The trial court held a hearing on the sanctions motion on August 16, 2021. After the hearing, in an order dated August 31, 2021, the trial court granted the motion for sanctions pursuant to Code § 13.1-672.5 and ordered Joseph Monroe to pay $70,097.11 to MEPCO and Lisa Monroe.[1]

## II.

On appeal, Joseph Monroe argues that the trial court's sanctions award against him should be vacated for two reasons. First, the court entered the sanctions order after the expiration of Rule 1:1's mandatory 21-day period. Second, the court's finding of bad faith was unwarranted. Lisa Monroe disagrees with both assertions and adds that we need not address either of them because Joseph Monroe, in his individual capacity, is not a proper party to this appeal.

## A.

We first address Lisa Monroe's assertion that the appeal should be dismissed outright because Joseph Monroe "is a separate and independent entity from Appellant." Appellee's Br. at 11. The notice of appeal, she points out, identifies the Appellant as "Joseph Monroe, derivatively on behalf of MEPCO Materials, Inc.," 1 J.A. at 304 (altering capitalization), but the trial court only sanctioned Joseph Monroe in his individual capacity. The appeal should be summarily dismissed, she reasons, because Joseph Monroe in a derivative capacity appealed but

---

[1] Joseph Monroe represents on appeal that the circuit court entered a final divorce decree on May 5, 2022. Appellant's Br. at 5 n.1. Neither Lisa nor Joseph Monroe suggests that the divorce decree has any effect on the issues raised in this appeal.

3

was not sanctioned, and Joseph Monroe in his individual capacity was sanctioned but did not appeal.

We appreciate the premise underlying this argument and, in other contexts, accept it as settled law. It is generally true that absent special circumstances, "[a] person who sues or is sued in his official or representative capacity is, in contemplation of law, regarded as a person distinct from the same person in his individual capacity and is a stranger to his rights or liabilities as an individual." *Reineck v. Lemen*, 292 Va. 710, 722 (2016) (citation omitted).[2] This distinction applies to various capacities in which a litigant can appear in court. *See generally* Restatement (Second) of Judgments § 36 cmts. a-g (1982) (describing different consequences of such capacities).[3]

The case before us, however, is a shareholder-derivative action. At its inception, what we now call a derivative action was an "invention of equity," 12B William Meade Fletcher & Carol A. Jones, Fletcher Cyclopedia of the Law of Corporations § 5908, at 536, 539 (rev. ed. 2017), that "courts of equity" employed to vindicate a corporation's legal interests against the

---

[2] In *Reineck*, the curator of an estate filed suit on behalf of the estate, but the circuit court awarded attorney fees against him in his individual capacity. We vacated the award because the curator had been previously appointed to represent the estate and had not at any time appeared in an individual capacity during the estate litigation. *Reineck*, 292 Va. at 722-24. We also expressly declined to consider "what other avenues may be available for sanctions and attorney's fees when a party in a representative capacity has filed a frivolous suit or one for vindictive or harassing purposes." *Id.* at 723 n.4.

[3] *See, e.g.*, *Hawthorne v. VanMarter*, 279 Va. 566, 575-76 (2010) (concluding that administrators of an estate "did not become aggrieved parties in the case merely by virtue of their desire to recover the fees purportedly owed to them" and that they were "not entitled to file the present appeal in a pro se capacity"); *Kone v. Wilson*, 272 Va. 59, 62-63 (2006) (concluding that the personal representative of a decedent was authorized to file a wrongful-death action only in his representative capacity and not "pro se"); *cf. Vaughn v. Vaughn*, 215 Va. 328, 328-29 (1974) (holding that a petitioner failed to properly serve the appeal on all party-respondents because the order appealed from affected the opposing party both individually and in her capacity as administratrix but that certified service had only been completed upon opposing party in her capacity as administratrix).

wrongdoing of company insiders, *Brown v. Bedford City Land & Improvement Co.*, 91 Va. 31, 37 (1895); *see also Dodge v. Woolsey*, 59 U.S. (18 How.) 331, 341 (1855). The General Assembly codified this "bill in equity" procedure, *Brown*, 91 Va. at 32, in 1985 when it adopted the revised Model Business Corporation Act, which addressed the procedure for derivative proceedings. *See* Virginia Code Comm'n, *Report of the Virginia Code Commission on the Revision of Chapters 1 and 2 of Title 13.1 of the Code of Virginia*, H. Doc. No. 13, at 44, 236-37 (1985). In 1992, the General Assembly, again following the lead of an addition to the Model Business Corporation Act, made significant revisions to the derivative-suit statutes by repealing Code § 13.1-672 and enacting Article 8.1 of the Virginia Stock Corporation Act. *See* Code §§ 13.1-672.1 to -672.7; 1992 Acts ch. 802, at 1270-72; Allen C. Goolsby & Steven M. Haas, Goolsby & Haas on Virginia Corporations § 8.2, at 144 (7th ed. 2022).

Virginia law views a shareholder-derivative action as "an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder." *Little v. Cooke*, 274 Va. 697, 709 (2007) (quoting *Simmons v. Miller*, 261 Va. 561, 573 (2001)). A shareholder "shall not commence or maintain" a derivative action if, among other things, the shareholder does not "[f]airly and adequately" represent the corporation's interests. Code § 13.1-672.1(A)(3). This caveat requires a fair-and-adequate showing both at the time the shareholder initiates the action ("shall not commence") and at all times during the proceeding ("shall not . . . maintain"). *Id. See generally Cattano v. Bragg*, 283 Va. 638, 646-47 (2012) (listing factors for determining whether the shareholder "meets the standard for fair and adequate representation"). The fair-and-adequate threshold thus serves as a statutory standing requirement that the putative representative must satisfy from the beginning to the end of the derivative action. *See* Model Business Corporation Act § 7.41 cmt. (Am. Bar

5

Ass'n 2021). While this standing requirement may in some cases intersect the merits of the underlying claim, it nonetheless remains the gatekeeper for the entire proceeding to ensure that the shareholder-plaintiff does not abuse the process "for personal advantage." *Id.*

Even with standing, the shareholder can still lose on the merits by failing to prove that the corporation had a valid claim against the allegedly liable insider. The mere loss by itself, however, does not expose the shareholder to sanctions. Sanctions can be imposed only if the court finds that the shareholder-plaintiff "commenced or maintained" the derivative action "arbitrarily, vexatiously, or not in good faith." Code § 13.1-672.5(2). Upon making that finding, a court "may . . . [o]rder the plaintiff or the plaintiff's attorney to pay the corporation's or any defendant's expenses incurred in defending the proceeding." *Id.* A finding of arbitrariness, vexatiousness, or bad faith under Code § 13.1-672.5 necessarily presupposes that the shareholder did not "commence or maintain" the derivative action in a manner that "[f]airly and adequately" represents the corporation's interests, Code § 13.1-672.1(A)(3).

We survey this statutory background to demonstrate why a shareholder-derivative action is different from a suit brought purely in one's representative capacity, such as an executor suing on behalf of an estate. In a shareholder-derivative action, the shareholder initiating the action is seeking judicial approval of his representative capacity, not relying upon a *previous* recognition of such capacity by court order, statute, or common law. The typical caption of a complaint filed by a shareholder in a derivative action may be optimistically styled, "John Doe, Derivatively on behalf of XYZ, Inc." But in substance it really means, "John Doe, Individually," seeking a judicial declaration that he be allowed to represent XYZ, Inc. against its will and thereby be deemed to appear in court as "John Doe, Derivatively on behalf of XYZ, Inc." If the shareholder succeeds in acquiring his sought-after representative status, courts in derivative actions will treat

6

him as a "nominal plaintiff" because he is there in name only.[4]  But if he fails to persuade the court that he can fairly and competently represent the corporation, the shareholder never becomes a *nominal* plaintiff.  He remains simply an unsuccessful shareholder-plaintiff in his individual capacity.

The "dual nature" of the proceeding, *Ross v. Bernhard*, 396 U.S. 531, 534-35 (1970), explains why the sanctions provision of the shareholder-derivative statute, Code § 13.1-672.5, authorizes an award against the unsuccessful "plaintiff or the plaintiff's attorney."  In the vocabulary of Code § 13.1-672.5, the sanctioned "plaintiff" could not possibly be the corporation that just won the case outright.  Instead, the "plaintiff" is the usurping shareholder who wrongly claimed to represent the corporation against its will and did so in an arbitrary, vexatious, or bad-faith manner.  In this scenario, the shareholder is the actual plaintiff representing himself, not a nominal plaintiff representing the corporation.

To summarize, a shareholder initiating a derivative action, no matter the caption of the complaint, does so as a putative, not actual, representative of the corporation.  The shareholder becomes a de jure representative only by establishing that he "[f]airly and adequately represents" the corporation's interests.  *See* Code § 13.1-672.1(A)(3).  The shareholder forfeits that status (whether it was previously accepted by the court or merely presumed in silence) if and when the court concludes that the shareholder "commenced or maintained" the derivative action "arbitrarily, vexatiously, or not in good faith."  Code § 13.1-672.5(2).

These observations undermine Lisa Monroe's argument that we should dismiss this appeal because the notice of appeal was filed by "Joseph Monroe, Derivatively on Behalf of

---

[4] *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970); *Mission Residential, LLC v. Triple Net Props., LLC*, 275 Va. 157, 161-62 (2008); *Simmons*, 261 Va. at 573-75; *Mount v. Radford Tr. Co.*, 93 Va. 427, 430-31 (1896); Goolsby & Haas, *supra*, § 8.2, at 145.

MEPCO Materials, Inc." rather than "Joseph Monroe, Individually." True enough, she won the case on the merits and successfully obtained a sanctions award against Joseph Monroe personally, but the sanctions statute, Code § 13.1-672.5, does not require him to be added to the lawsuit in his individual capacity. It instead presupposes that he has been there all along in his failed effort to be deemed the true representative of the corporation. We thus deny Lisa Monroe's motion to dismiss this appeal.

B.

Having found that Joseph Monroe's appeal is properly before us, we now address his argument that the sanctions order violated Rule 1:1 because it was entered more than 21 days after the May 12, 2021 Final Order. Although the "Final Order" stated, "This matter is final," 1 J.A. at 178-79, Lisa Monroe argues that the text of the order proves otherwise. We disagree.

1.

Rule 1:1 ends the litigation in a trial court 21 days after entry of a final order. At the most general level, the finality principle is straightforward:

> Unless otherwise provided by rule or statute, a judgment, order, or decree is final if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree.

Rule 1:1(b). This formulation has been accepted in Virginia for more than a century. *See* 4 John B. Minor, Institutes of Common and Statute Law 1066 (3d ed. 1893), *quoted in Daniels v. Truck & Equip. Corp.*, 205 Va. 579, 585 (1964). Relying on this general definition, Lisa Monroe argues that the May 12, 2021 order could not be (as it was titled) a "Final Order" because it did not dispose of the "whole subject" and leave "nothing to be done." Appellee's Br. at 15 (citation

8

omitted). She offers two related, but distinct, reasons why this is true. We find neither persuasive.

First, she reasons that the order could not be final because the court had not yet ruled on her motion for sanctions. The problem with this argument is not its logic but its sense of timing. There was no motion for sanctions pending when the court entered its Final Order on May 12, 2021. The court acknowledged that Lisa Monroe was "free to file" a later motion if she chose to do so. *See* 1 J.A. at 179. But the "leaves nothing to be done" phrase in Rule 1:1(b) means nothing left for the *court to do*, not the litigants. The court's to-do list was done on May 12, 2021. The mere possibility, even probability, of a future motion cannot negate the finality of what would otherwise be a final order under Rule 1:1(b).

Second, Lisa Monroe points to a provision in the Final Order (just before "[t]his matter is final"), which states that any future motion "is to be set at the discretion of the Court." 1 J.A. at 179. This too is a weak hook on which to hang an assertion of indefinite, future jurisdiction over this case. When coupled with the "free to file" statement, the "set at the discretion of the Court" phrase merely states that the court *may* hear in open court a future motion that a party *may* file. *See* 2 *id.* at 810 ("I'm not saying I'm going to grant it. I'm not saying I'll even grant a hearing on it . . . .").

As we have repeatedly said, to "avoid the application of the 21 day time period" running from what would otherwise be a final order, the order must include "*specific* language stating that the court is retaining jurisdiction" over the case. *Johnson v. Woodard*, 281 Va. 403, 409-10 (2011) (emphasis added); *see also Northern Va. Real Est., Inc. v. Martins*, 283 Va. 86, 103-04

9

(2012). Nothing in the May 12, 2021 Final Order clearly declares that the trial court intended to indefinitely suspend the Rule 1:1 time period.[5]

Finally, for the sake of completeness, we acknowledge that Lisa Monroe filed her motion for sanctions within the 21-day period. Settled principles, however, address this point as well. "Neither the filing of post-trial or post-judgment motions, nor the trial court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the twenty-one day time period of Rule 1:1." *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 560 (2002). "The running of the twenty-one day time period prescribed by Rule 1:1 may be interrupted only by the entry, within the twenty-one day time period, of an order modifying, vacating, or suspending the final judgment order." *Id.* Such an order is necessary if a circuit court needs "sufficient time to address [a] post-trial motion" after the entry of the final order. *Kosko v. Ramser*, 299 Va. 684, 689 (2021); *see also Berean Law Grp., P.C. v. Cox*, 259 Va. 622, 626-27 (2000); *Wagner v. Shird*, 257 Va. 584, 587 (1999).[6]

### III.

In sum, Joseph Monroe had standing to appeal the sanctions award entered against him personally as the "plaintiff" under Code § 13.1-672.5. Because the sanctions order violated Rule

---

[5] As noted earlier, *supra* at 2, after Lisa Monroe's counsel asked for "leave to file" a later sanctions motion, counsel acknowledged that "[t]he Court remains in jurisdiction over this matter for 21 days after it rules. I think we can get in here before then." 2 J.A. at 804, 806. The understanding between counsel and the court, at least at the hearing, was exactly our holding today — the May 21, 2021 order was a final order that triggered the running of the 21-day period under Rule 1:1. Nothing in the court's Final Order, prepared by Lisa Monroe's counsel, stated otherwise.

[6] Given our holding, we need not address Joseph Monroe's challenge to the trial court's finding that "at a minimum, Mr. Monroe 'maintained' this suit arbitrarily and not in good faith." 1 J.A. at 299.

10

1:1, however, we deem the May 12, 2021 Final Order to be the final order in this case and vacate the August 31, 2021 order granting sanctions.

*Vacated.*