STATE OF ILLINOIS *ex rel.* HUNT, Atty. Gen., *v.* ILLINOIS CENT. R. Co.

*(Circuit Court, N. D. Illinois.* February 23, 1888.)

1. REMOVAL OF CAUSES—FEDERAL QUESTION—LAWS IMPAIRING OBLIGATION OF CONTRACT—DISCLAIMER.

In an action in the nature of *quo warranto,* brought in the name of the state, by her attorney general, to prevent a railroad company from exercising certain rights and privileges, and from controlling certain lands, the defendant petitioned for the removal of the cause to the circuit court of the United States, alleging that it acquired ownership in the land under an act of the legislature, and in accordance therewith exercised rights of ownership; that subsequently the act granting the land was repealed; that such repealing act was in violation of the provisions of the constitution relating to laws impairing the obligation of contracts, and of the fourteenth amendment, declaring that no person shall be deprived of property without due process of law. *Held,* that the petition showed an issue in the action arising under the constitution, within the meaning of act Cong. March 3, 1887, relating to the removal of causes from the state to the federal courts; and a disclaimer by the attorney general of the state, that no reliance was placed on the repealing act, cannot operate to eliminate such issue.

2. SAME—CIVIL ACTION—QUO WARRANTO.

An information in the nature of *quo warranto,* under Rev. St. Ill. c. 112, against a railroad company for exercising possessory rights over lands without authority of law, although in form a criminal proceeding, is in its nature essentially a civil action, within the meaning of act Cong. March 3, 1887, relating to the removal of causes from the state to the federal courts.

On Motion to Remand to the State Courts.

The attorney general of Illinois, having first obtained leave, filed, May 9, 1887, in the criminal court of Cook county, an information in the nature of a *quo warranto,* in the name and on behalf of the people of Illinois, against the Illinois Central Railroad Company. The information sets forth that the Illinois Central Railroad Company was incorporated by an act of the general assembly of Illinois, approved February, 1851, and for more than 12 months last past has used and exercised, and still uses and exercises, without any warrant, charter, or grant therefor, the following privileges, powers, and franchises, to-wit: It assumes to own the submerged lands as the same existed April 16, 1869, constituting the bed of Lake Michigan, and lying east of the tracks and breakwater of the Illinois Central Railroad Company, for the distance of one mile, and between the south line of the south pier extended eastwardly and a line extended eastward from the south line of lot 21, south of and near the round-house and machine-shops of said company in the South division of the city of Chicago, county of Cook, comprising 1,000 acres, more or less, which tract or parcel of land is not owned, possessed, or used for any of the uses or purposes for which said company was incorporated, and is not owned, used, or held in pursuance of the provisions of said act; and that said company has assumed to exercise, and does usurp and unlawfully exercise, possessory rights and rights of ownership over said submerged lands, has filled portions of the same with earth and other materials, and has constructed, and is constructing, docks, piers, wharves, and breakwaters in and upon such lands. The information charges that the company, during the same period, has

usurped and has unlawfully exercised other powers, liberties, privileges, and franchises, not granted to it, to-wit: That of constructing, maintaining, operating, and using, and leasing for hire, docks, wharves, and piers, in and upon, and in connection with, the submerged lands constituting the bed of Lake Michigan, and extending to the navigable waters thereof, which said docks, wharves, and piers are not necessary to the constructing, owning, and operating of said railroad, and still usurps and unlawfully exercises said powers, privileges, liberties, and franchises, and during said time has unlawfully claimed, and still unlawfully claims, the right to maintain, operate, lease for hire, and use said docks, wharves, and piers, and to collect tolls and charges for the use thereof by vessels, and from any and all persons using the same for the purpose of receiving freight from, or in delivering freight to, vessels upon the waters of Lake Michigan. The prayer of the information is that the company answer by what warrant it claims to have, use, and enjoy said powers, liberties, privileges, and franchises.

On the 16th of May, 1887,—at which time it was required to appear and answer,—the railroad company filed its petition and bond for the removal of the cause into this court. The petition for removal states that the matter in dispute exceeds the sum of $2,000, exclusive of costs; that this proceeding involves as well the legal title and ownership of the lands described in the information, as the right to use and occupy the same for the purposes therein mentioned; and that the suit really and substantially involves a controversy between the state of Illinois and the company, arising under the constitution of the United States. It asserts title in the company to the premises in controversy, and the right to use and occupy them as in the information alleged, through an act of the general assembly of the state of Illinois, passed April 16, 1869, entitled "An act in relation to a portion of the submerged lands and Lake Park grounds lying on and adjacent to the shore of Lake Michigan, on the eastern frontage of the city of Chicago," the third, seventh, and eighth sections of which are as follows:

"Sec. 3. The right of the Illinois Central Railroad Company, under the grant from the state in its charter, which said grant constitutes a part of the consideration for which the said company pays to the state at least seven per cent. of its gross earnings, and under and by virtue of its appropriation, occupancy, use, and control, and the riparian ownership incident to such grant, appropriation, occupancy, use, and control in and to the lands, submerged or otherwise, lying east of the said line running parallel with and 400 feet east of the west line of Michigan avenue, in fractional sections ten (10) and fifteen, (15,) township and range as aforesaid, is hereby confirmed, and all the right and title of the state of Illinois in and to the submerged lands constituting the bed of Lake Michigan, and lying east of the tracks and breakwater of the Illinois Central Railroad Company, for the distance of one mile, and between the south line of the south pier extended eastwardly, and a line extended eastward from the south line of lot twenty-one, south of and near to the round-house and machine-shops of said company, in the South division of the said city of Chicago, are hereby granted, in fee, to the said Illinois Central Railroad Company, its successors and assigns: provided, however, that the fee to said lands shall be held by said company in perpetuity, and that the said company shall not have

power to grant, sell, or convey the fee to the same; and that all gross receipts from use, profits, leases, or otherwise of said lands, or the improvements thereon, or that may hereafter be made thereon, shall form a part of the gross proceeds, receipts, and income of the said Illinois Central Railroad Company, upon which said company shall forever pay into the state treasury, semi-annually, the per centum provided for in its charter, in accordance with the requirements of said charter.    And provided, also, that nothing herein contained shall authorize obstructions to the Chicago harbor, or impair the public right of navigation; nor shall this act be construed to exempt the Illinois Central Railroad Company, its lessees or assigns, from any act of the general assembly which may be hereafter passed, regulating the rates of wharfage and dockage to be charged in said harbor.    And provided, further, that any of the lands hereby granted to the Illinois Central Railroad Company, and the improvements now, or which may hereafter be, on the same, which shall hereafter be leased by said Illinois Central Railroad Company to any person or corporation, or which may hereafter be occupied by any person or corporation other than said Illinois Central Railroad Company, shall not, during the continuance of such leasehold estate, or of such occupancy, be exempt from municipal or other taxation."

"Sec. 7. The grants to the Illinois Central Railroad Company contained in this act are hereby declared to be upon the express condition that said Illinois Central Railroad Company shall perpetually pay into the treasury of the state of Illinois the per centum on the gross or total proceeds, receipts, or income derived from said road and branches stipulated in its charter, and also the per centum on the gross receipts of said company reserved in this act.

"Sec. 8. This act shall be a public act, and in force from and after its passage."    Laws Ill. 1869, p. 245.

The petition further alleges that the company formally accepted the act, causing due and proper notice thereof to be made a matter of record in the office of the secretary of state of the state of Illinois; and, relying upon said act, more particularly the third, seventh, and eighth sections thereof, after the passage thereof formally took possession of considerable portions of the submerged lands described therein, and thereafter expended upon the same about the sum of $500,000; that after such acceptance, and after it had formally taken possession of said lands, an act was passed by the general assembly of Illinois, approved April 15, 1873, (Laws Ill. 1873–74, p. 119,) in terms providing that the act of April 16, 1869, "be, and the same is hereby, repealed;" but which repealing act, it will insist at the hearing of the cause, was an attempt to impair and annul the contract between it and the state, resulting from the act of April 16, 1869, and the acceptance thereof, and is therefore repugnant to the first clause of section 10, art. 1, Const. U. S., providing that no state shall pass any law impairing the obligation of contracts; that it will also insist, at the hearing, that the act of April 15, 1873, is void, as an attempt to deprive it of property and vested rights and interests, without due process of law, and is therefore in violation of the first section of the fourteenth amendment of the constitution of the United States, providing that no state shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.    The petition states that these questions are material; must be determined at the trial of this suit; and that said suit is one

arising under the constitution of the United States within the meaning of the act of congress approved March 3, 1887, relating to the jurisdiction of circuit courts of the United States, and regulating the removal of causes from state courts.

On the 31st of May, 1887, after the transcript of the record from the state court had been filed in this court by the state, the attorney general placed on file the following paper:

"And now comes the people of the state of Illinois, by George Hunt, attorney general of said state, and as to the certain parts and portions of the petition of said defendant for the removal of this cause from the criminal court of Cook county to this court, which state and set up in effect that this suit really and substantially involves a controversy between the people of the state of Illinois and said petitioner, the defendant, arising under the constitution of the United States, by reason of the repeal by the act of April 15, 1873, of the alleged act of April 16, 1869, in said petition mentioned, the said people of the state of Illinois, by said attorney general, denies and traverses the allegations, in that behalf contained in said petition for removal, and says that the sole ground upon which it is claimed by the said people of the state of Illinois that the defendant in said information does not rightfully possess, and ought to be ousted from the exercise of, the powers and franchises in said information alleged to have been unlawfully usurped, etc., is that the people of the state of Illinois hath not ever, or in any manner, either by the original charter of said Illinois Central Railroad Company, or by the said supposed act of April 16, 1869, in said petition for removal mentioned, or by any other act of the general assembly of said state, granted to, or conferred upon, the said Illinois Central Railroad Company the corporate powers and franchises in said information alleged to have been unlawfully usurped and exercised by said railroad company; and said people of the state of Illinois have not made any claim, and now make no claim, that the said act of April 15, 1873, in said petition for removal mentioned, ever had, or has, the effect, or could have the effect, to impair or deprive the said railroad company of any corporate rights, powers, franchises, or property which it acquired, or with which it became vested by virtue of the said supposed act of April 16, 1869; and the said attorney general, for and in behalf of the people of the state of Illinois, hereby disclaims and disavows any such right or claim under said repealing act of April 15, 1873; and the said attorney general hereby disclaims any reliance on said repealing act of April 15, 1873, for any purpose whatever in this cause; and so the said attorney general, for and in behalf of the people of the state of Illinois, denies that said prosecution so instituted in said criminal court involves a controversy between the people of the state of Illinois and the said railroad company, arising under the constitution of the United States, as alleged in said petition for removal; wherefore, upon this ground, as well as upon the ground that the said proceeding in said criminal court, by such information in the nature of a *quo warranto*, is not, under the laws of the state of Illinois, a suit of a civil nature, and is not, therefore, removable under the act of congress in that behalf, from said criminal court to this court, the said attorney general prays that the same may be remanded to said criminal court of Cook county," etc.

"GEORGE HUNT, Attorney Gen'l of Ill."

*W. G. Ewing*, Dist. Atty., for the United States.

*George Hunt*, Atty. Gen., *E. B. McCagg*, and *Williams & Thompson*, for the People.

*B. F. Ayer*, *J. N. Jewett*, and *Lyman Trumbull*, for the Illinois Cent. R. Co.

*M. W. Fuller*, for the city of Chicago.

*James K. Edsall* and *A. S. Bradley*, for Citizens' Committee.

Mr. Justice HARLAN, after stating the facts in the foregoing language, delivered the opinion of the court.

This cause is before the court upon a motion in behalf of the state to remand it to the criminal court of Cook county, upon the general ground that it is not one of which a circuit court of the United States can, under the act of March 3, 1887, properly take cognizance. As the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, the motion must be denied, if the suit is one "arising under the constitution or laws of the United States," and is also of a "civil nature." Act March 3, 1887, §§ 1, 2. It is the settled doctrine of the supreme court of the United States that a case is one arising under the constitution or a law of the United States "whenever its correct decision depends upon the construction of either," or when "the title or right set up by the party may be defeated by one construction of the constitution or laws of the United States, or sustained by the opposite construction." *Cohens* v. *Virginia*, 6 Wheat. 379; *Osborn* v. *Bank*, 9 Wheat. 822; *Water Co.* v. *Keyes*, 96 U. S. 201; *Railroad Co.* v. *Mississippi*, 102 U. S. 135; *Starin* v. *New York*, 115 U. S. 257, 6 Sup. Ct. Rep. 28. In the last case, the language of the court, speaking by the chief justice, was: "If, from the questions, it appears that some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the constitution or laws of the United States." It is equally well settled that, as the right of removal from a state court to a court of the United States is statutory, "jurisdiction must in some form appear in the record of every suit," and, in a case commenced in a state court, that the record includes the petition for removal. So that, if the pleadings do not, at the time the application for removal is made, show the case to be one arising under the constitution or a law of the United States, the facts making such a case must be set forth in the petition for removal; otherwise the state court is not deprived of its right to proceed. *Water Co.* v. *Keyes*, 96 U. S. 201. Applying these rules, it is clear that the present case is one arising under the constitution of the United States. The information questions the authority of the railroad company to exercise posessory and proprietary rights over a large body of submerged lands, constituting the bed of Lake Michigan, and to construct, maintain, operate, and lease for hire, docks, wharves, and piers upon said lands. The defense of the company, as we have seen, is that it acquired the ownership of those lands, and the right to construct, maintain, operate, and lease wharves, docks, and piers in connection therewith, by the act of April 16, 1869; and that the repealing act of 1873 is repugnant, as well to the clause of the constitution providing that no state shall pass any law impairing the obligation of contracts, as to the section of the fourteenth amendment declaring that no state shall deprive any person of life, liberty, or property, without

due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. It is plain, upon the record as it stood when the right of removal was asserted, that the case really and substantially involves a controversy as to rights depending upon the construction or effect of the constitution. It does not differ, in respect to the point under consideration, from *State* v. *Railroad Co.*, 16 Fed. Rep. 881, now under submission for final decree by this court. But it is contended that the case should be remanded, because it appears from the paper filed by the attorney general of Illinois that he disclaims reliance for any purpose whatever in this proceeding upon the repealing act. It is quite sufficient, upon this point, to say that the court is bound to take judicial notice of that statute, and must give effect to it, unless at the hearing it be adjudged to be unconstitutional and void. The disclaimer of the attorney general cannot work a repeal of the act of 1873, nor close the eye of the court to the fact that the state—if it could be constitutionally done—has repealed the act of 1869. As the railroad company bases its claim to own the lands in question, and its authority to construct and maintain wharves, docks, and piers in connection with them, upon the act of 1869, the court, notwithstanding this disclaimer, could not refuse to adjudge—if such should be its opinion—that the right of the company to claim anything under that statute, in respect to those lands, had been legally withdrawn by the repealing act. Even if the attorney general had stipulated with the company that he would not, in this proceeding, claim anything for the state under the latter act, the court would feel obliged to disregard such stipulation. Whether the repealing act had such effect, is a question which the company proposes to raise, at the proper time, and in proper form, for judicial determination. Upon that question mainly depends the result of this litigation. The presence in the cause of such an issue makes this a case arising under the constitution of the United States.

The next question to be considered is whether this cause is of a civil nature. Except certain cases, of which this is not one, no case is removable from a state court, into a circuit court of the United States, unless it is of a civil nature. The earliest statute in Illinois allowing an information in the nature of a *quo warranto* was enacted in 1826. Its provisions were substantially preserved in the act of March 3, 1845, (Rev. St. Ill. 1845, p. 429,) which allowed such an information against any person usurping, intruding into, or unlawfully holding or executing any office or franchise, and which provided that, if the defendant was adjudged to be guilty, the court might give judgment of ouster from said office or franchise, and also impose a fine upon him. The first case in the supreme court of Illinois, under that statute, was *Donnelly* v. *People*, 11 Ill. 552. There the question was whether the constitutional provision that "all prosecutions shall be carried on 'in the name and by the authority of the people of the state of Illinois,' and conclude 'against the peace and dignity of the same,'" embraced the case of an information in the nature of a *quo warranto* against an individual for usurping a public office. The court held the proceeding to be a substitute for the ancient

writ of *quo warranto,* "but none the less of criminal prosecution, as well to punish the usurper for the usurpation of the franchise as to oust him from its enjoyment;" and that the same certainty is required in such informations as is required in indictments.    To the same effect, as to the point in judgment, are *People* v. *Railroad Co.,* 13 Ill. 66, and *Hay* v. *People,* 59 Ill. 94.    In *People* v. *Ridgley,* 21 Ill. 66, it was said that such an information was "understood to be a criminal proceeding;" and in *Smith* v. *People,* 44 Ill. 23,—which was an information in the nature of *quo warranto* for usurpation of office, by one who was alleged to be ineligible thereto,—the proceeding was incidentally described as one "in the nature of a criminal information, and, before it can be maintained, the proof must be clear and satisfactory that the party is disqualified." But the cases which seem to involve more directly the question as to the nature of such a proceeding are *People* v. *Shaw,* 13 Ill. 581, and *Ensminger* v. *People,* 47 Ill. 387.    In *People* v. *Shaw*—which was an information in the nature of a *quo warranto* against certain persons for usurping the office of bridge commissioners—one of the questions presented was whether that case was embraced by a statute regulating changes of venue only in *civil* causes.    The court, speaking by CATON, J., said: "In form this is a criminal proceeding, but it is only so in form.    In substance it is for the protection of the private and individual rights of the relator and others in the precinct similarly situated.    *Donnelly* v. *People,* 11 Ill. 552.    *    *    *    It is *the nature of the rights to be asserted and maintained to which we should look,* rather than the form in which the party may be obliged to proceed to assert those rights, in giving a just interpretation to the statute.    This being, in substance, a civil suit, we are of opinion that the statute secured to the relator a right to a change of venue upon making out a proper case."

In *Ensminger* v. *People*—which was an information in the nature of a *quo warranto* against certain persons assuming to collect tolls and control the anchoring of vessels at Cairo—the question was whether the case was governed by the act giving power to the court to grant a change of venue to a defendant in an indictment or information, for an offense not punishable by death.    It was contended that the court, under that statute, had a discretion in the premises, whereas, in civil causes, the right to a change of venue, in certain circumstances, was absolute.    The court said: "Is this an offense punishable criminally?    If so, it falls within this enactment; if not, it is otherwise.    We are aware of no decision that has ever held that a proceeding by *quo warranto* is criminal in its nature, much less in form.    *    *    *    It then follows that, as this is not a criminal proceeding, the court erred in refusing to grant a change of venue."    The result of the cases under the statute of 1845, in the state court, seems to be that, while an information in the nature of a *quo warranto,* for usurpation of an office or franchise, is a "prosecution," within the meaning of the constitutional provision above referred to, must be framed with the precision required in indictments, and be sustained by clear and satisfactory proof,—it is, in its substance, and from the nature of the rights asserted by it, a civil proceeding.    Such, evidently, is the

theory of the act of March 23, 1874, under which this proceeding was instituted. That act is a revision of the law of Illinois in relation to *quo warranto*. Among the cases in which it permits an information in the nature of a *quo warranto*, is that of a corporation exercising "powers not conferred by law," in respect to which, if found guilty, the court may enter judgment of ouster, and also impose a fine. The seventh section of that act provides that "appeals and writs of error may be taken and prosecuted in the manner, and upon the same terms, and with like effect, as in *other civil* cases,"—directly implying, if not expressly declaring, that the cases therein provided for are civil cases After the adoption of this statute, the case of *People* v. *Holtz*, 92 Ill. 428, was determined in the supreme court of Illinois. That was an information in the nature of a *quo warranto* to try the title to the office of directors of schools in a certain district of St. Clair county. The question was presented whether the appeal in that case should not have gone to the appellate court of the state. The court said: "This is not a criminal case, nor does it involve a freehold or the validity of a statute."

In *Ames* v. *Kansas*, 111 U. S. 460, 4 Sup. Ct. Rep. 437, the whole subject was carefully considered. That was a proceeding to test the right of one railroad company to hold, possess, and use the franchises and privileges, powers and immunities, of another railroad corporation. It is contended that that case is inapplicable here, because, while the Kansas statute authorized a dissolution of the corporation, where the charge was sustained, it did not authorize the imposition of a fine. But it is clear that the court would not have reached a conclusion different from that announced, had the local statute authorized the imposition of a fine or penalty upon the offending corporation. The chief justice, upon a full review of the authorities, and referring to the original common-law writ of *quo warranto*, said: "This writ, however, fell into disuse in England centuries ago, and its place was supplied by an information in the nature of a *quo warranto*, which, in its origin, was 'a criminal method of prosecution, as well to punish the usurper by a fine for the usurpation of the franchise as to oust him or keep it for the crown.' 3 Bl. Comm. 263. Long before our Revolution, however, it lost its character as a criminal proceeding in everything except form, and was 'applied to the mere purposes of trying the civil right, seizing the franchise, or ousting the unlawful possessor,—the fine being nominal only,'"—citing, among other authorities, *King* v. *Francis*, 2 Term R. 484. In the latter case the inquiry was whether a new trial could be granted on an information in the nature of a *quo warranto* for usurping an office; its determination depending upon the question whether the proceeding was criminal or civil in its nature. The new trial was granted, the court observing "that of late years a *quo warranto* information had been considered merely in the nature of a civil proceeding." The decision in *Ames* v. *Kansas* was distinctly to the effect that the nature of the right asserted and at issue in a proceeding of this character, under a state law, furnished the test whether the proceeding was of a civil or a criminal nature.

So, in 4 Bl. Comm. 312, the author says that the information in the

nature of a *quo warranto* is "usually considered, at present, as merely a civil proceeding." Referring to the two modes for judicially ascertaining and enforcing the forfeiture of a charter for default or abuse of power, one mode being by *scire facias*, where there is a legal existing body capable of acting, but who has abused their power, Kent says: "The other mode is by information in the nature of a *quo warranto*, which is in form criminal, and in its nature a civil remedy." 2 Kent, Comm. 313. See, also, Cole, Crim. Inf. 112, 113; Jac. Law Dict. tits. "Information and Quo Warranto;" Ang. & A. Corp. § 733.

Although the practice in Illinois in this class of cases is, in some respects, similar to that obtaining in criminal cases, and although informations in the nature of *quo warranto* may be of a "*quasi* criminal nature," under the statute defining and regulating the jurisdiction of the criminal court of Cook county, (*Wiggins* v. *City of Chicago*, 68 Ill. 372; *Naylor* v. *City of Galesburg*, 56 Ill. 285,) I am of opinion that, as the primary and only material object of the present proceeding is to enforce a civil right, it is to be regarded as a suit of a civil nature, within the principle of the decision in *Ames* v. *Kansas*, and within the meaning of the act of congress; and this, notwithstanding the court has a discretion, in addition to a judgment of ouster, to impose a fine.

The motion to remand is denied.

BLODGETT, J.   I concur in both the opinion and the judgment.