## JACOBS et al. v. MEXICAN SUGAR CO.

(Circuit Court, D. New Jersey. May 31, 1904.)

1. JURISDICTION OF FEDERAL COURT—SUIT FOR DISSOLUTION OF CORPORATION—ENFORCEMENT OF STATUTORY REMEDY.

A proceeding by a stockholder or creditor of a corporation for an injunction and the appointment of a receiver for the corporation as an insolvent, under the New Jersey corporation act (P. L. 1896, p. 298, § 65), which authorizes such proceeding in the Court of Chancery whenever a corporation shall become insolvent or suspend its ordinary business for want of funds, is one involving a money controversy, so as to that extent to be within the jurisdiction of a federal court, where diversity of citizenship exists and the requisite amount is in dispute.

2. EQUITY JURISDICTION—FEDERAL COURTS—SUIT BASED ON LEGAL DEMAND.

A simple contract creditor of a corporation cannot maintain a suit in a federal court of equity to establish his claim and for the seizure and application thereon of the property of the corporation, although the state statute may authorize such a proceeding in a state court.

3. SAME—SUIT FOR DISSOLUTION OF CORPORATION—STATUTORY REMEDY.

A suit by a stockholder of an insolvent corporation for the dissolution of the corporation and the winding up of its affairs is within the jurisdiction of a federal court of equity, where such remedy is expressly given the stockholder by a state statute.

In Equity.

James E. Howell and Nathan Bijur, for complainants.

Lindley M. Garrison, for defendant.

ARCHBALD, District Judge.* The defendant, the Mexican Sugar Company, is a corporation organized under the laws of New Jersey with a capital stock of $600,000, all of which has been issued; and the complainants Arthur Jacobs and Solomon R. Jacobs are stockholders, being joint owners of 495 shares of the par value of $49,500, and several owners of 2 and 3 shares respectively. They are the further owners of voting trust certificates representing 1,500 shares. issued to Henry J. Braker and Solomon R. Jacobs as voting trustees, such certificates standing in the name of Arthur Jacobs. Solomon R. Jacobs is also a creditor of the company to the extent of over $10,000. The two complainants, with Henry J. Braker, James B. Craven, and Arthur E. Dowler are the directors; Henry J. Braker being president and manager, Arthur E. Dowler secretary, and Solomon R. Jacobs treasurer. The business of the company is the raising and manufacture of sugar, molasses, and their by-products; its capital being chiefly invested in a lease from the Mexican Sugar Refining Company of a sugar plantation in the state of Vera Cruz, Mexico, having a sugar refinery in course of construction thereon, with the usual stock, implements, and appliances. The bill charges that the company is insolvent, and does not intend to and cannot carry on its business for want of funds; that, unless the court intervenes for the protection of its stockholders and creditors, its assets will be totally lost and dissipated;

¶ 1. Dissolution of foreign corporations, see note to Republican Mountain Silver Mines v. Brown, 7 C. C. A. 421.

* Specially assigned.

and that on April 25, 1904—two days before the filing of the bill—at a meeting of the directors, and by the votes of Braker, Craven, and Dowler against the votes of the two complainants, all the available assets of the company were turned over to one James W. Cunningham, a representative of Braker, to secure an indebtedness of $45,537.69; and an indebtedness of $4,956.06 confessed for insurance to the Mexican Sugar Refining Company, from whom the lease of the plantation in Mexico was obtained, which it is claimed was not in fact due. There are other matters set forth in the bill, but this will suffice to indicate its general trend. The prayers are: (1) That the defendant be declared to be insolvent, and be restrained by injunction from exercising its franchise or collecting, transferring, or disposing of any of its property; (2) that a receiver be appointed on behalf of creditors and stockholders, with all the ordinary powers; (3) that the rights of the complainant Solomon R. Jacobs and all other creditors be ascertained, and the assets of the defendant company be administered, to the end that the rights, liens, and equities of such creditors be established and enforced against the same.

The insolvency of the company is admitted, and the other charges not denied; but the jurisdiction of the court in the premises is contested, and that is the question to be disposed of. The bill is based on section 65 of the general corporation act of 1896 of the state of New Jersey (P. L. p. 298), which is as follows:

"Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, any creditor or stockholder may by petition or bill of complaint setting forth the facts and circumstances of the case apply to the Court of Chancery for a writ of injunction and the appointment of a receiver or receivers or trustees and the court being satisfied by affidavits or otherwise of the sufficiency of said application and of the truth of the allegations contained in the petition or bill, and upon such notice if any as the court by order may direct may proceed in a summary way to hear the affidavits proofs and allegations which may be offered on behalf of the parties, and if upon such inquiry it shall appear to the court that the corporation has become insolvent and is not about to resume its business in a short time thereafter with safety to the public and advantage to the stockholders, it may issue an injunction to restrain the corporation and its officers and agents from exercising any of its privileges or franchises and from collecting or receiving any debts or paying out selling assigning or transferring any of its estate moneys funds lands tenements or effects, except to a receiver appointed by the court until the court shall otherwise order."

A case is undoubtedly stated in the bill which brings it within the provisions of the statute, if the court has authority to assume jurisdiction under it. The general power of the federal courts to take cognizance of and enforce a right created by state law which is essentially equitable in its nature is too well established to call for extended discussion or citation of authorities. Land Title & Trust Co. v. Asphalt Co. (C. C. A.) 127 Fed. 1. Conceding that such is the case, however, it is contended that a proceeding under the law in question does not involve a money dispute such as is essential to the jurisdiction of this court under the acts of Congress. It is, on the contrary, as decided by Vice Chancellor Stevenson in Gallagher v. Asphalt Co. (N. J. Ch.) 55 Atl. 259, in the nature of an equitable quo warranto, to determine the right of the corporation to continue its business. But, whatever

its character, I cannot accept the view that it does not present a dispute measurable in money, within the meaning of the federal law. The complainant in such a bill, whether as stockholder or creditor, comes into court to protect his pecuniary interest, which is imperiled by the insolvency of the corporation and its inability to further carry out with success its corporate purposes. He seeks the intervention of the court in its affairs, in the manner provided by the statute, to save himself as far as possible from financial loss. No merely benevolent purpose to shield the general public from imposition by reason of its insolvent condition brings him there; nor does he move in behalf of the state, of which the corporation is a creature, as would the attorney general or other representative executive officer of the state government. So far as the defendant is concerned, its continued existence is, of course, involved; but the proceeding is prosecuted by the complainant because of the direct personal interest which he has to subserve. If successful, there will, in the final outcome, when the corporate affairs are wound up, be a money decree establishing his right to a share in what is realized if the assets go far enough, or in favor of others who are necessarily brought into court by the proceeding if they do not. This clearly presents a money controversy, of which, if it exceeds the limit established by Congress, and is between citizens of different states, the Circuit Court has jurisdiction. By some of the federal judges, the value of the assets of the corporation which the court is called upon to administer is regarded as determining the limit (Hill v. Glasgow R. R. [C. C.] 41 Fed. 610; Towle v. American Building & Loan Society [C. C.] 60 Fed. 131; Taylor v. Decatur Mineral Land Co. [C. C.] 112 Fed. 449; Jones v. Mutual Fidelity Co. [C. C.] 123 Fed. 506), while by others it is held that the amount in controversy as to each complainant is his particular claim, which must therefore be sufficient in itself to confer jurisdiction (Putney v. Whitmire [C. C.] 66 Fed. 385; cf. Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163, 29 L. Ed. 329; Handley v. Stutz, 137 U. S. 366, 11 Sup. Ct. 117, 34 L. Ed. 706). But without stopping to determine which is the true standard, upon either basis in the present instance we have enough. The objection to the court's jurisdiction on the ground of the want of a proper money dispute is not, therefore, well taken.

So far as the complainant Solomon R. Jacobs is a simple contract creditor, having no lien by way of pledge or otherwise on the property of the defendant company, and his claim not having been reduced to judgment, he has no standing in this court to prosecute the present bill, the state law to the contrary notwithstanding. This question was not passed upon in Land Title & Trust Co. v. Asphalt Co. (C. C. A.) 127 Fed. 1, the pursuing party, as is there pointed out by Gray, J., being a lienholding creditor as pledgee of nearly all the assets of the company. But it is declared by Mr. Justice Brewer in Hollins v. Briarfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, to be the settled law of the federal courts "that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor and its application to the satisfaction of their claims; and this notwithstanding a statute of the state may authorize such a proceeding in the courts of the state." It is said in Darragh v.

Wetter Manufacturing Co., 78 Fed. 7, 23 C. C. A. 609, and in Jones
v. Mutual Fidelity Co., 123 Fed. 506, that this is an obiter dictum,
there being no state statute in the case before the court which justi-
fied the proceeding; but there was in the prior cases of Scott v.
Nealy, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, and Cates v.
Allen, 149 U. S. 457, 13 Sup. Ct. 977, 37 L. Ed. 804, where the same
doctrine is enunciated and enforced; the fact that in the latter instance
the defendants were individuals, and not a corporation, making no dif-
ference.     Neither was it so regarded in Morrow Shoe Manufacturing
Co. v. New England Shoe Co., 60 Fed. 341, 8 C. C. A. 652, 24 L. R.
A. 417, First National Bank v. Prager, 91 Fed. 689, 34 C. C. A. 51, and
Harrison v. Farmers' Loan & Trust Co., 94 Fed. 728, 36 C. C. A. 443,
in each of which the right of a simple contract creditor to prosecute
a bill of this character, although sanctioned by the state law, was denied.
The point is that, for the federal courts to take jurisdiction in equity
where the bill is founded on a legal claim, adjudicating and establishing
it if denied, runs counter to the provisions of the Constitution which
secures to parties the right to a trial by jury; and this objection state
legislation cannot, of course, remove.     This may not be true where
there is no controversy as in the case of Tompkins v. Catawba Mills
(C. C.) 82 Fed. 780, where the validity of the plaintiff's claim was ad-
mitted by the answer, and the jurisdiction was sustained upon that
ground.     But, even if that position is a sound one, it cannot be assumed
in the present instance that the alleged debt of Mr. Jacobs will not
ultimately be contested and denied.

But both of the complainants come also into court as stockholders with
large interests, alleging the insolvency of the company and the malad-
ministration of its affairs, and the question is whether in that capacity
they are entitled to be heard.     It is well settled that, in the absence
of enabling statutes courts of equity have no general jurisdiction at the
instance of a shareholder to decree the dissolution of a corporation and
to wind up its affairs.     9 Am. & Eng. Encycl. Law (2d Ed.) 601; 10
Cycl. Law & Pro. 988, 1035; Worth Mfg. Co. v. Bingham, 116 Fed.
785, 54 C. C. A. 119.     But in the present instance there is such a stat-
ute, and, if the right to intervene which it confers is essentially equitable
in character, it is properly appealed to; and that it is, as it seems to
me, there can be little doubt.     Towle v. American Building, etc., So-
ciety (C. C.) 60 Fed. 131.     Says Mr. Justice Bradley in Graham v.
Railroad, 102 U. S. 148, 26 L. Ed. 106:

"When a corporation becomes insolvent, it is so far civilly dead that its
property may be administered as a trust fund for the benefit of its stockholders
and creditors.     A court of equity, at the instance of the proper parties, will
then make those funds trust funds, which in other circumstances are as much
the absolute property of the corporation as any man's property is."

Commenting upon this in Hollins v. Briarfield Coal & Iron Co., 150
U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, already referred to, it is
said by Mr. Justice Brewer:

"With reference to the suggestion in this last paragraph, it may be ob-
served that the court does not attempt to determine who are proper parties
to maintain a suit for the administration of the assets of an insolvent cor-
poration.     All that it decides is that, when a court of equity does take into

its possession the assets of an insolvent corporation, it will administer them on the theory that they in equity belong to the creditors and stockholders, rather than to the corporation itself. * * * Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free, also, from the touch of a stockholder, who, though equitably interested in, has no legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, place the property in a condition of trust, first for the creditors, and then for the stockholders. Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property as such, for the direct benefit of either creditor or stockholder."

From these authorities it plainly appears that the administration of the affairs of an insolvent corporation falls strictly within the prerogatives of a court of equity, which may therefore be rightfully exercised in their behalf when once they are properly invoked. The only question is at whose instance and under what circumstances this can be done. That it cannot be where the moving party is a simple contract creditor in a court where the distinction between legal and equitable rights is strictly observed, we have already seen. Neither can it—having regard to the general principles of law—on the complaint of a shareholder. But it is just at this point that the statute of the state steps in. By it a single stockholder, alleging the insolvency of the corporation and its inability to further carry on its business with safety to the public and advantage to those interested therein, may ask the intervention of the court to enjoin the exercise of its franchises and wind up its affairs. The court, where this course is taken, is thus put in possession of the case by one who has the undoubted right to invoke its jurisdiction, and the rest is a mere matter for the exercise of its recognized equity powers. The bill is therefore well brought, and must be sustained.

Let a decree be drawn awarding an injunction and appointing a receiver as prayed for.