<hr />

## KLEIN v. WILSON & CO., Inc.

(District Court, D. New Jersey. September 11, 1925.)

**1. Removal of causes ⬡⟹4—Stockholder's suit under state statute held removable.**

A suit by a stockholder against a corporation, brought under a state statute to have the corporation adjudged insolvent, for the appointment of a receiver, and the administration of its assets, is a suit of a civil nature in equity and removable, where the other essential conditions exist.

**2. Courts ⬡⟹281—"Quo warranto" is civil suit for purpose of determining jurisdiction.**

Under modern law, quo warranto is a civil remedy, and a proceeding in quo warranto under a state statute is a civil suit, for the purpose of determining the jurisdiction of a federal court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Quo Warranto.]

**3. Corporations ⬥665(3)—State court cannot administer general assets of foreign corporation.**

The courts of a state are without power to assume the general administration of the assets of a corporation of another state, which are not within its territorial jurisdiction.

**4. Courts ⬥371(1)—Federal courts enforce laws of state.**

A federal court has the same power as the courts of the state in which it sits to administer the laws of that state respecting corporations, in a cause of which it has jurisdiction.

**5. Courts ⬥328(2)—In stockholder's suit for receivership, amount in controversy is value of corporate assets.**

In a suit by a stockholder for the appointment of a receiver and the winding up of the affairs of the corporation, the amount in controversy is the value of the entire corporate assets.

In Equity. Suit by Maurice I. Klein against Wilson & Co., Inc. On motion to remand to state court. Denied.

Order affirmed 7 F.(2d) 777. See, also, 7 F.(2d) 769.

William Harris, of Newark, N. J., for the motion.

Lindabury, Depue & Faulks, of Newark, N. J., opposed.

RUNYON, District Judge. The above-entitled suit was instituted in the New Jersey Court of Chancery on August 23, 1924, by Maurice I. Klein, who, in the affidavit supporting his bill of complaint, describes himself as "a citizen and resident of the state of New Jersey," and the defendant Wilson & Co., Inc., as "a corporation duly organized and existing (under?) and by virtue of the laws of the state of New York."

The defendant, on September 2, 1924, appeared in the Court of Chancery, filed its petition for the removal of the said cause to this court, and also filed the bond required upon such application. The Chancellor thereupon made an order directing the removal of said cause upon the ground, as therein recited, that it was "a proper cause for removal to said United States District Court for the District of New Jersey."

The complainant, the next day thereafter, applied to the Chancery Court for an order revoking the order of removal already issued, and the Chancellor thereupon directed that Vice Chancellor Backes, to whom the original application for an order to show cause had been made by the complainant, should hear such application for a revocation. This was done, and the Vice Chancel-

lor denied complainant's motion for revocation.

The matter having been removed to this court, the complainant now moves that it be remanded to the Court of Chancery, and in his supporting affidavit complainant's counsel advances his belief, as warranting the application, (1) that this is not a suit of a civil nature in equity, wherein the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000; (2) that the allegations contained in the defendant's petition for removal as to the nature of the suit, the amount in controversy, and the diversity of citizenship, are untrue; (3) that the suit is in the nature of an equitable quo warranto proceeding under the New Jersey statutes, to which all stockholders and creditors and the state are parties, that the object thereof is to fix the status of defendant as to solvency, etc., and that the prayer for a receiver is but ancillary to the main relief sought, viz. an injunction to restrain the corporation from exercising the franchises in New Jersey; and (4) that it is not a removable cause, and that this court is without jurisdiction over the subject-matter, and cannot acquire same by removal.

[1, 2] First, as to the nature of the suit in question: The complainant designates it as in the nature of an equitable quo warranto, and therefore not in reality a civil action. This view is not upheld by the federal courts. Chief Justice Waite, speaking for the court, in Ames v. Kansas, 111 U. S. 449, 4 S. Ct. 437, 28 L. Ed. 482, holds suits in the nature of an information had under a state statute involving the affairs of a private corporation, to be of a civil nature, despite their form; his language being, in part, as follows:

"The original common-law writ of quo warranto was a civil writ, at the suit of the crown, and not a criminal prosecution. Rex v. Marsden, 3 Burr. 1812, 1817. It was in the nature of a writ of right by the king against one who usurped or claimed franchises or liberties, to inquire by what right he claimed them (Com. Dig. Quo Warranto A), and the first process was summons (Id. c. 2). This writ, however, fell into disuse in England centuries ago, and its place was supplied by an information in the nature of a quo warranto, which, in its origin, was 'a criminal method of prosecution, as well to punish the usurper by a fine for the usurpation of the franchise, as to oust him, or seize it for the crown.' 3 Bl. Com. 263. Long before our Revolution, however, it lost its

character as a criminal proceeding in everything except form, and was 'applied to the mere purposes of trying the civil right, seizing the franchise, or ousting the wrongful possessor; the fine being nominal only.' 3 Bl. Com. supra; The King v. Francis, 2 T. R. 484; Bac. Ab. tit. Information D; 2 Kyd. on Corp. 439. And such, without any special legislation to that effect, has always been its character in many of the states of the Union. Commonwealth v. Browne, 1 S. & R. 385; People v. Richardson, 4 Cow. [N. Y.] 102, note; State v. Hardie, 1 Iredell Law [23 N. C.] 42, 48; State Bank v. State, 1 Blackf. [Ind.] 267, 272 [12 Am. Dec. 234]; State v. Lingo, 26 Mo. 496, 498.

"In some of the states, however, it has been treated as criminal in form, and matters of pleading and jurisdiction governed accordingly. Such is the rule in New York, Wisconsin, New Jersey, Arkansas, and Illinois, but in all these states it is used as a civil remedy only. Attorney General v. Utica Insurance Company, 2 Johns. Ch. [N. Y.] 370, [371], 377; People v. Jones, 18 Wend. [N. Y.] 601; State v. West Wisconsin Railway Company, 34 Wis. 197, 213; State v. Ashley, 1 Ark. 279; State v. Roe, 2 Dutch. [26 N. J. Law] 215, 217. This being the condition of the old law, it seems to us clear that the effect of legislation like that in Kansas, as to the mode of proceeding in quo warranto cases, is to relieve the old civil remedy of the burden of the criminal form of proceeding with which it had become incumbered, and to restore it to its original position as a civil action for the enforcement of a civil right. The right and the remedy are thus brought into harmony, and parties are not driven to the necessity of using the form of a criminal action to determine a civil right. This has been the construction put upon similar laws in other states. State v. M'Daniel, 22 Ohio St. 354, 361; Central & Georgetown Railroad Company v. Taylor, 5 Colo. 40, 42; Commercial Bank of Rodney v. State, 4 Smedes & M. [Miss.] 439, 490, 504. These suits are therefore of a civil nature."

Justice Harlan, sitting in the case of State of Illinois v. Illinois Central Railroad Co. (C. C.) 33 F. 721, and delivering the opinion of the court, said:

"In People v. Shaw [13 Ill. 581]—which was an information in the nature of a quo warranto against certain persons for usurping the office of bridge commissioners—one of the questions presented was whether that case was embraced by a statute regulating changes of venue only in civil causes. The court, speaking by Caton, J., said: 'In form this is a criminal proceeding, but it is only so in form. In substance it is for the protection of the private and individual rights of the relator and others in the precinct similarly situated. Donnelly v. People, 11 Ill. 552 [52 Am. Dec. 459]. * * * It is the nature of the rights to be asserted and maintained to which we should look, rather than the form in which the party may be obliged to proceed to assert those rights, in giving a just interpretation to the statute. This being, in substance, a civil suit, we are of opinion that the statute secured to the relator a right to a change of venue upon making out a proper case.' "

Coming to the consideration of cases in our own circuit, the opinion of Judge Gray in the case of Land Title & Trust Co. v. Asphalt Co. of America, 127 F. 1, 62 C. C. A. 23, is in point. This was a case in which the appellant claimed that the Circuit Court of the United States had no jurisdiction to entertain the suit on the ground of insolvency, either under the New Jersey statute or under the general powers of the equity courts, and the court says:

"Under the Constitution and judiciary act, 'Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, * * * in which there shall be a controversy between citizens of different states.' The tests of jurisdiction, exclusive of the amount in dispute are therefore that there shall be (1) a 'case' or 'suit' of a civil nature, as those terms have been defined by the Supreme Court of the United States, (2) which is cognizable in a court of the state wherein the federal Circuit Court has territorial jurisdiction, and (3) that such suit shall involve a controversy between citizens of different states. When such conditions exist, such Circuit Court has authority to fully adjudicate the legal rights of the parties to such controversy, as they exist under the laws of the state, as fully as they could be adjudicated in the appropriate state tribunal of concurrent jurisdiction. In so doing, the federal Circuit Court is necessarily dealing with and adjudicating rights that exist under and by virtue of the laws of the state in which such Circuit Court has its territorial jurisdiction.

"The Constitution and laws of the United States provide an additional forum to that of the state, for the adjudication of suits involving controversies between citizens of different states, not a different law. Any party who has a right to come into the Circuit Court of the United States, finds a court clothed with plenary power to do justice according to law, as existing in the state wherein such Circuit Court is held. Such courts, therefore, administer the law of that state, and it would be doing violence to our dual scheme of government, if it could be predicated of a right created by and existing under the laws of a state, that it could not be asserted and enforced in the Circuit Court of the United States, in the exercise of its concurrent jurisdiction as prescribed and limited by the Constitution and judiciary act. The Constitution imposes no limitation upon the class of cases involving controversies between citizens of different states, to which the judicial power of the United States may be extended; and Congress may therefore lawfully provide for bringing, at the option of either of the parties, all such controversies within the jurisdiction of the federal judiciary. Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524; Ellis v. Davis, 109 U. S. 485, 3 S. Ct. 327, 27 L. Ed. 1006."

See, also, Jacobs v. Mexican Sugar Co. (C. C.) 130 F. 589, and Kessler v. Necker, Inc. (D. C.) 258 F. 654, both of which are Third Circuit cases.

[3] It is to be remembered that the defendant in this case is a New York corporation, and that the complainant in his original bill appeals to the general equity power of the Court of Chancery, and, among other forms of relief requested, asks the court "that a receiver be appointed for said defendant corporation * * * or that an equity receiver may be appointed with such powers as may be necessary in the premises," and " * * * that the court fully administer the funds, being the entire assets of the defendant corporation, and for that purpose marshal and ascertain all of its assets, liens, and priorities, if any, existing on all parts thereof, and enforce the lawful liens and rights of all the creditors and stockholders of said defendant as they may be finally ascertained," this in addition to its appeal to the powers granted in section 65 of the New Jersey Corporation Law (2 Comp. St. 1910, p. 1640)—all of which leads me to the opinion that the present suit is a civil suit in equity, not only by reason of its form, but by reason of the substance thereof and the relief sought. And one of the many difficulties confronting the complainant in his contention that the present suit should be sent back to the Court of Chancery is the nature and extent of that same relief sought in his bill of complaint, as above noted.

The Court of Chancery is besought, on behalf of all creditors and stockholders, wherever they may be located, to assume general jurisdiction of a foreign corporation, to administer fully its funds, to marshal all its assets and enforce the lawful liens and rights of all creditors and stockholders; in short, to wind up the affairs of the corporation.

This, in effect is asking the Court of Chancery to assume and exercise a power to which it has never laid claim, that of dominion over all the assets of a foreign corporation and the winding up of its affairs. That it can, under state statutes, exercise dominion over the property of a foreign corporation located within the state of New Jersey, administer it for the benefit of creditors and stockholders, enjoin it from doing business in the state, is obvious.

"The act concerning corporations makes the remedies thereby provided in case of insolvency applicable to foreign corporations, so far as practicable. * * * Obviously, there are provisions of the act which cannot be applied to such corporation; for example, this court cannot hinder such corporations from exercising their franchises, except as it may enjoin them from exercising them in this state. It can sequester their property here and administer it for the benefit of creditors and stockholders, but it can do little more. * * * In the language of the New York Supreme Court, in De Bemer v. Drew, 57 Barb. 438, this court cannot regulate the internal affairs of foreign corporations, nor enforce any remedy beyond the limits of this state; it cannot annul or forfeit their charters, but it can and ought to provide for the collection of debts against them, when they or their property are brought within the jurisdiction of the courts of this state. The foreign corporation doing business here is subject to the provisions of our statute, so far as its property in this state is concerned. * * * The efficacy of the above-quoted provision of our statute as to foreign corporations is in securing to creditors and stockholders, citizens of this state, a just application of the property in this state of those corporations when

insolvent." Minchin v. Second Nat. Bank of Paterson, 36 N. J. Eq. 436.

[4] But a state court of New Jersey cannot and will not attempt to oust the state of a corporation's creation and domicile from the exercise of its dominant jurisdiction over the affairs of such corporation. And, so far as assuming jurisdiction of the property of a foreign corporation located in New Jersey is concerned, this court has undoubted authority, as broad and far reaching as is the state court's right; an authority, too, with which the state court may not interfere.

"It cannot be doubted that the federal court, in the exercise of its general equity jurisdiction, has power to appoint a receiver on a stockholder's bill, determine a corporation's solvency and distribute its assets, and that no state statute can impair or destroy that power." O'Neil v. Welch, 245 F. 261, 157 C. C. A. 453 (Third Circuit).

The requirement concerning diversity of citizenship would seem to be fully met in the facts that the complainant Klein is a resident and citizen of the state of New Jersey, while the defendant corporation is organized under the laws of New York, and has its principal office in New York City. The complainant's bill alleges the foregoing as facts, and the defendant makes no claim to the contrary. The status of both parties, therefore, is unquestioned, and meets the demands of the federal statutes and practice regarding diversity of citizenship.

[5] Complainant also claims, in partial support of his motion to remand, that the jurisdictional amount of $3,000 is not involved in the present suit, and yet in his prayer for relief, as contained in the original bill, he seeks, through the appointment of a receiver, to gain control of the entire assets of the corporation, amounting to more than $100,000,000. It is in the capacity of stockholder, too, and not as a creditor that he brings his suit, and asks his relief for the benefit of all the defendant's stockholders and creditors. Here, then, is a stockholder's suit, alleging a corporation to be insolvent, and seeking to administer millions of dollars' worth of assets. In view of this condition, the amount "involved" is the amount over which the complainant seeks to gain control—the entire assets of the corporation.

This view finds support in Towle v. American Building Loan & Investment Society (C. C.) 60 F. 131, which too was a shareholder's suit, seeking to have the court assume the administration of the society's assets. A state receiver, disputing the federal receiver's rights, contended, among other things, that there was, in the first place, no controversy between the complainant and defendant, and, secondly, that, if there were, there was nothing to show that it exceeded $2,000 in amount. On these two points Judge Grosscup said:

"It is sufficient to say that whenever any property or claim of parties capable of a pecuniary estimation is the subject of litigation, a controversy, within the meaning of the judiciary act, is disclosed. In this case the entire assets of the society are brought into court for administration, and are, therefore, the matters in dispute or controversy."

"The amount in dispute is the value of the property and assets of the defendant which the bill seeks to have administered by the court." Taylor v. Decatur Mineral & Land Co. (C. C.) 112 F. 449.

"In such a suit by a bondholder or shareholder for the appointment of a receiver of a corporation the amount in controversy is the value of the entire corporate assets." Cole v. Philadelphia & Eastern R. Co. (C. C.) 140 F. 944.

In my opinion, every requirement necessary to give this court jurisdiction exists in the present case.

This suit is of a civil nature in equity, is between citizens of different states, and involves a money controversy in excess of $3,000. It was the defendant, a resident and citizen of New York state, who sought its removal to this court, and such removal had the full approval, both of the Chancellor and the Vice Chancellor, to whom the original application for a receiver was made.

Under these circumstances, and for the reasons above set forth, the motion to remand to the New Jersey Court of Chancery is denied.